**UNITED STATES**

v.

**John E. VANDERMARK, 123 60 3327, Fireman Recruit (E–1), U. S. Navy.**

**NMCM 82 0588.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 12 Aug. 1981.

Decided 12 Aug. 1982.

LCDR W. P. Caruthers, JAGC, USN, Appellate Defense Counsel.

LT Philip J. Shebest, JAGC, USNR, Appellate Defense Counsel.

LCDR Craig A. Biegel, JAGC, USNR, Appellate Government Counsel.

Before ABERNATHY, Senior Judge, and KERCHEVAL and BARR, JJ.

ABERNATHY, Senior Judge:

Appellant was convicted at a special court-martial bench trial of sixteen specifications of failure to go to his appointed place of duty and two periods of unauthorized absence totalling nearly seven months, all violations of Article 86, 10 U.S.C. § 886, Uniform Code of Military Justice (UCMJ). The court sentenced appellant to a bad-con-duct discharge, forty-five days confinement at hard labor and the forfeiture of $330.00 pay per month for four months. Reviewing authorities approved the sentence as adjudged. At trial appellant, through his own testimony, raised the affirmative defense of duress for the alleged periods of unauthorized absence. His single assigned error challenges the striking of that testimony by the military judge, leaving appellant without evidence of record to support his defense. We find the assignment to be without merit, but since it addresses a first impression interpretation of Mil.R.Evid. 301(f)(2), a discussion is in order. The error as assigned is that:

THE MILITARY JUDGE IMPROPERLY STRUCK THE APPELLANT'S TESTIMONY, TO THE APPELLANT'S SUBSTANTIAL PREJUDICE, WHEN:

A. HE DENIED GOVERNMENT COUNSEL'S REQUEST TO WITHDRAW ITS MOTION TO STRIKE.

B. HE MECHANICALLY APPLIED RULE 301(f)(2) MRE WITHOUT DUE REGARD TO THE FACTS OF THE CASE.

C. HE RULED THAT THE QUESTION POSED BY GOVERNMENT COUNSEL TO THE APPELLANT, WHO REFUSED TO ANSWER, WAS RELEVANT TO THE DEFENSE OF DURESS.

The accused voluntarily took the stand for the limited purpose of testifying in defense of the two unauthorized absence specifications. Appellant stated that he owed a substantial amount of money to some shipmates and that one of his creditors had threatened bodily harm if payment was not tendered. Furthermore, appellant claimed that this creditor had, on one occasion, actually assaulted him and another creditor had threatened to throw the accused overboard. Appellant extensively described his sense of fear that these threats would materialize into seriously harmful action. The accused also testified that he'd often spoken with the ship's chaplain and an NIS agent concerning these threats in a three week period

between the assault and his unauthorized absence. In an attempt to establish an early termination date appellant also testified that he had turned himself in to the U.S. Consulate in Palma, Spain.

On cross-examination trial counsel questioned appellant in detail about the alleged debts, probing appellant's financial background in relation to his ability to pay as well as establishing the fact that appellant owed money to several other shipmates. Counsel then asked appellant why he owed these amounts of money. Defense counsel objected on grounds of relevance. Trial counsel argued that the questions were relevant because they related to whether the accused knowingly or negligently placed himself in a position where coercion would be probable and because this line of questioning had a direct bearing on the defense's contention of a reasonably well grounded apprehension of bodily harm.

The military judge researched trial counsel's proposition and concluded that the government's argument was persuasive. Defense counsel then expressed an intention to exercise appellant's right to remain silent since he contemplated revelation of uncharged misconduct by the prosecution's line of questioning. The trial judge expressed an inclination to strike appellant's entire testimony upon proper motion and informed appellant of the potential results this action might have upon his case. After a short recess to discuss the matter, appellant persisted in exercising his right to remain silent with respect to *any* further

cross-examination. Trial counsel's motion to strike appellant's testimony pursuant to Mil.R.Evid. 301(f)(2) was then granted.[1] Appellant asserts here that the questions, why he owed the money, were immaterial to his direct testimony and also argues that the military judge abused his discretion by striking all of appellant's direct testimony. We disagree for the reasons which follow.

Mil.R.Evid. 301(f)(2) states:

If a witness asserts the privilege against self-incrimination on cross-examination, the military judge, upon motion, may strike the direct testimony of the witness in whole or in part, unless the matters to which the witness refuses to testify are purely collateral.

As noted in the editorial commentary on this Rule in SALTZBURG, SCHINASI, and SCHLEUTER, MILITARY RULES OF EVIDENCE MANUAL (1981), it is not clear to those commentators what happens when an accused is the witness who takes the stand and refuses to answer questions on cross-examination.

Mil.R.Evid. 301(f)(2) is a codification of a long-standing common law rule of evidence which is well-established in civilian and military practice.[2] The rule's language, the drafter's analysis, editorial commentary, and the civilian and military judicial cases which are the basis for the rule, provide an excellent insight for its application in the present circumstances where the recalcitrant witness is the accused himself.[3]

---

1. At one point trial counsel attempted to withdraw his motion to strike in order to further question appellant on the matter of his asserted duress defense, arguing that this would create a substantive appellate record. Counsel noted, however, that the motion to strike could then be reasserted. The military judge properly ruled that continued questioning on this matter would be improper and unfair, especially with a motion to strike looming in the distance. We agree with the military judge's ruling and thus dispose of appellant's contention in subparagraph (A) of his assignment of error.

2. *See* the drafter's commentary to Mil.R.Evid. 301(f)(2):

(2) *On cross-examination.* This provision is new and is intended to clarify the situation

in which a witness who has testified fully on direct examination asserts the privilege against self-incrimination on cross-examination. It incorporates the prevailing civilian rule, which has also been discussed in military cases. *See e.g. United States v. Colon-Atienza,* 22 C.M.A. 399, 47 C.M.R. 336 (1973); *United States v. Rivas,* 3 M.J. 282 (C.M.A.1977).

*see also United States v. Phaneuf,* 10 M.J. 831 (A.C.M.R.1981); *United States v. Glenn,* 4 M.J. 706 (N.C.M.R.1977); 5 *Wigmore on Evidence,* §§ 1364, 1390 (Chadbourn Ed. 1974); 22 C.J.S. Criminal Law § 44.

3. *See* Mil.R.Evid. 101(b).

■ An accused who takes the stand and voluntarily testifies on his own behalf waives his privilege against self-incrimination with respect to all relevant matters raised by his direct testimony. *Brown v. United States,* 356 U.S. 148, 154–156, 78 S.Ct. 622, 626–627, 2 L.Ed.2d 589 (1958). This general rule is founded upon cogent considerations which balance the privilege against self-incrimination and the importance of cross-examination as a trial's most important tool for arriving at the truth through reliable evidence. *See generally United States v. Panza,* 612 F.2d 432, 436–439 (9th Cir. 1979).

The accused's right to testify has never been an unqualified one. While it is a basic right in our system of justice, it overlaps other fundamental interests,[4] including a most significant limitation that by testifying the accused opens himself to cross-examination on all matters reasonably related to his direct testimony. For this reason, an accused's decision to take the stand may be a difficult one. Mr. Justice Frankfurter, in *United States v. Brown, supra* 356 U.S. at 155–56, 78 S.Ct. at 626–627, put the issue in this manner:

"[A] witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell."

■ An accused as a witness is distinguishable from a non-party witness, since an accused has the right not to testify at all. A non-accused has no such choice; he must testify if called as a witness. *See United States v. Phaneuf,* 10 M.J. 831, 834 (A.C.M.R.1981). This difference is compatible with Mil.R.Evid. 301(f)(2), but once the accused decides to testify we see him at that point as just another witness covered, as such, by Rule 301(f)(2). Applying that rule, therefore, leaves us with the only real question necessary to a disposition of the propriety of appellant's asserted right to remain silent: the materiality of the questions.

As noted in the drafter's analysis for the Military Rules of Evidence:

Where the assertion shields only "collateral" matters—*i.e.,* evidence of minimal importance (usually dealing with a rather distant fact solicited for impeachment purposes)—it is not appropriate to strike direct testimony. A matter is collateral when sheltering it would create little danger of prejudice to the accused. Where the exercise of the privilege reaches the core of the direct testimony or prevents a full inquiry into the credibility of the witness, however, striking of the direct testimony would appear mandated.

*See also United States v. Glenn,* 4 M.J. 706 (N.C.M.R.1977).

Trial counsel premised the relevance of his objectionable question upon the assertion that the affirmative defense of duress cannot be claimed by one who knowingly or negligently places himself in a position where it is probable that he would be subjected to coercion. No military authority was advanced for this proposition; indeed, government counsel's assertion is not delineated in paragraph 216(f), *Manual for Courts-Martial, 1969 (Rev.) (Manual),* as an element of duress.

Several commentators, treatises and annotations note that duress may not be claimed as an affirmative defense if the accused has intentionally or recklessly placed himself in a situation in which it was reasonably foreseeable that he would be

---

4. For instance, perjury is never part and parcel of an accused's privilege to testify, and is another boundary to an accused's testimony besides the one discussed here. *See United* States v. Grayson, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *United States v. Panza,* 612 F.2d 432 (9th Cir. 1979).

subjected to coercion. *See* WHARTON, CRIMINAL LAW AND PROCEDURE § 51, at 295 (14th ed. Torcia); 22 C.J.S. *Crim.Law* § 44 at 136; 40 A.L.R.2d 903; MODEL PENAL CODE—§ 2.09(2) (Proposed Official Draft 1962). This proposition has been adopted by several state legislatures. *See generally* the penal codes of Arkansas, Colorado, Connecticut, Delaware, Maine, New York, Utah and Washington. By common law, Iowa, Michigan, Oregon, and Texas have also incorporated this element into their legal definition of duress. *See* 22 C.J.S., *supra*. Although one military case clearly attempted to adopt this analysis of duress, review by the U. S. Court of Military Appeals has placed its status in serious doubt in the military justice system. *See United States v. Jemmings,* 50 C.M.R. 247 (A.C.M.R.1975), *rev'd,* 1 M.J. 414 (C.M.A.1976).[5] While this proposition seems persuasive, it is not our function to "legislate" upon such a matter and incorporate an additional element for duress defenses into the *Manual*. Therefore, this line of argument advanced by the trial counsel and appellate government counsel is rejected. Still, we find that trial counsel's questioning was material.

Trial counsel's questions were material for three reasons. First, why the debt existed goes to the very essence of establishing the arrearage. There was no evidence of a written loan agreement; there was no testimony by the alleged creditors. Why the debt existed becomes important when these gaps are considered. Second, appellant testified at great length that his fear of bodily harm was reasonably well grounded and plausible because of similar problems in USS FORRESTAL which led to the

death of a sailor. There was no evidence presented as to the nature of events in the FORRESTAL and their relationship to appellant's situation. Whether appellant owed money to his creditors for the same reason as the unfortunate FORRESTAL sailor is relevant to the asserted plausibility that these alleged threats were real and appellant's fear was reasonably well grounded. The FORRESTAL incident to which appellant referred may have dealt with illicit drug traffic, a crime of passion, etc. We simply do not know. Trial counsel had every right and obligation to develop the reason for the debt within this factual context. Third, the credibility of appellant is clearly in issue when counsel asked why the money was owed. Under these circumstances, we believe that trial counsel's line of questioning was material.

 The trial judge's power to control the conduct of the trial is broad, and necessarily many matters of trial procedure must be left to his discretion. Accommodating conflicts between an accused's interest in testifying and the need to insure truth through cross-examination is one of the trial judge's most important functions. *See* Mil.R.Evid. 611. Surely a trial judge's discretion in this area must be guided by reason and fairness, so the striking of testimony on direct is subject to appellate review under the standard of abuse of discretion. *See generally United States v. Panza, supra.* These considerations are reflected in the text of Mil.R.Evid. 301(f)(2).

██ Mil.R.Evid. 301(f)(2) explicitly establishes only the sanction of striking testimony within the discretion of the trial judge, and under the circumstances of this case, we find no abuse of that discretion.[6] As

---

**5.** "Although not considered necessary to the disposition of this case, we note that under the general law of duress the compulsion must have arisen without the negligence or fault of the person who urges it as a defense. Historically, it was stated that one who voluntarily joined a criminal venture knowing its purpose could not later urge duress as a defense if he was subsequently subjected to threats ...." *United States v. Jemmings,* 50 C.M.R. 247, 248 (A.C.M.R.1975) (footnotes omitted).

**6.** Civilian courts empower trial judges with several forms of sanctions where an accused improperly asserts his privileges of self-incrimination: (1) permit the prosecution to comment upon the accused's unprivileged refusal to answer; (2) permit the prosecution to impeach the accused by continuing to elicit his unprivileged refusal to answer; or (3) instruct the jury that it may take the accused's refusal to answer various questions into account when reaching a verdict. Historically, the trial judge's discretion has also included the power

noted earlier, the matter of inquiry went to the core of appellant's asserted defense of duress. Appellant was aware of the potential sanction and clearly chose to assert his privilege improperly in the face of that sanction. Further, appellant asserted his right to remain silent to *all* remaining questions on cross-examination. This action precluded trial counsel from probing any other matters asserted by appellant on direct testimony including his asserted early termination of the absence. Under these circumstances we feel that the trial judge's action in striking the entire testimony of appellant on direct was proper and certainly within the background policy considerations for Mil.R.Evid. 301(f)(2) noted earlier.

Accordingly, we find the asserted error to be without merit. An examination of the record reveals that no other error material to the substantial rights of the accused was committed. Therefore, the findings and sentence as approved on review below are affirmed.

Judge KERCHEVAL and Judge BARR concur.

to strike the testimony of a witness who improperly refuses to answer questions on cross-examination. *See* 5 *Wigmore on Evidence,* § 1390; *United States v. Panza, supra* at 437–39. We question the applicability of other sanctions employed in the federal system, especially in light of Mil.R.Evid. 512. Whether that rule would allow commentary on an accused's refusal to testify on cross-examination is unclear and is perhaps best left to a case more factually suited for that disposition.