UNITED STATES, Appellee,

v.

Specialist Four David L. PHANEUF, SSN 213–64–1176, United States Army, Appellant.

SPCM 14973.

U. S. Army Court of Military Review.

27 Feb. 1981.

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Linus Johnson, JAGC, and Captain Gary D. Gray, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major Douglas P. Franklin, JAGC, Captain Paul G. Thomson, JAGC, and Captain Thomas E. Booth, JAGC, were on the pleadings for appellee.

Before MITCHELL, DRIBBEN and WATKINS, JJ.

## OPINION OF THE COURT

DRIBBEN, Judge:

The appellant, pursuant to his pleas, was convicted of indecent assault in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (1976) by a special court-martial. He was sentenced to a bad-conduct discharge, confinement at hard labor for three months, forfeiture of $298 pay per month for three months, and reduction to Private E–1. The convening authority approved the sentence but suspended the punitive discharge for six months with provision for automatic remission.

The only meritorious question raised by appellant is whether the military judge committed reversible error by striking the entire testimony of a defense witness called in extenuation because the witness refused to answer a certain question on cross-examination.

### I

The witness, Specialist Four Suzanne Goudreau, testified in substance, on direct examination, that the victim of the appellant's indecent assault encouraged him by flirtatious behavior and provocative demeanor several times prior to the offense. On cross-examination, the trial counsel inquired into her friendship with the appellant and her dislike of the victim. Finally, the trial counsel asked Specialist Goudreau: "Isn't it true that the three of you [Goudreau, appellant, and appellant's roommate] are drug buddies?" The defense counsel's objection to this question was overruled by the military judge. Specialist Goudreau refused to respond to the question.

In a hearing out of the presence of the court members immediately following Specialist Goudreau's refusal to answer the question, the military judge ruled that the question was proper because it went to the issue of the witness' credibility. He refused the defense counsel's request that he instruct the court members regarding the uncharged misconduct implicit in the question and, at the request of the trial counsel to strike the entire testimony, instructed the court members not to consider it for any purpose whatsoever.

### II

The general rule regarding the proper course to be taken when a witness refuses to answer certain questions on cross-examination was set forth in *United States v. Rivas*, 3 M.J. 282, 285 (CMA 1977) (footnotes omitted):

As a general proposition, when a witness refuses to answer questions on cross-examination, 'the opportunity of thus probing and testing his statements [made on direct examination] has substantially failed, and his direct testimony should be struck out.' 5 Wigmore, Evidence § 1391 (Chadbourn rev. 1974). This is because the right to confront an adverse witness,

found in the Sixth Amendment of the Constitution of the United States, includes the right to cross-examine that witness. And as long as the subject matter of the cross-examination is germane to the direct examination or relates to the witness' credibility, cross-examination may extend to areas of self-incrimination. Of course, the witness may properly decline to answer such questions, instead invoking his right not to incriminate himself. In such circumstance, the accused's usual remedy for this denial of his right to confront an adverse witness is to have that witness' direct testimony stricken from the record.

That there are exceptions to the foregoing rule was explained in *Stephan v. United States*, 133 F.2d 87, 97 (6th Cir. 1943), *cert. denied* 318 U.S. 781, 63 S.Ct. 858, 87 L.Ed. 1148 (1943), *rehearing denied* 319 U.S. 783, 63 S.Ct. 1172, 87 L.Ed. 1727 (1943) (citations omitted):

> But to this general rule there are many exceptions. One is that "on the circumstances of the case, the refusal or evasion of answers to one or more questions only need not lead to this result. Wigmore further states, 'Courts treat this situation with varying degrees of strictness. It should be left to the determination of the trial judge, regard being had chiefly to the motive of the witness and materiality of the answer.'

The Court of Military Appeals has not decided whether an accused is entitled to have the direct testimony of a witness who refuses to answer questions on cross-examination stricken when those questions do not relate to the details of his direct testimony or bear only on the credibility of the witness. *See United States v. Colon-Atienza*, 22 U.S.C.M.A. 399, 47 C.M.R. 336 (1973); *United States v. Glenn*, 4 M.J. 706 (NCMR 1977), *pet. denied* 4 M.J. 357 (CMA 1978). However, numerous Federal Circuits and Military Courts have held that where cross-examination is directed to a witness' general credibility rather than to the events which gave rise to the offense charged, the accused is not entitled to have the direct testimony stricken from the record.[1]

## II

Two recent cases which dealt with the precise issue presented on this appeal are *People v. Carter*, 293 N.W.2d 681 (Mich. App.1980), and *State v. Brown*, 549 S.W.2d 336 (Mo.1977).

In *Carter* it was established by a separate record that a proposed defense witness would testify "as to the absence of Mr. Carter's involvement . . . or knowledge" relating to a charged drug offense but that he would not answer questions on cross-examination "tending to his own involvement or knowledge." The trial judge ruled that the witness' testimony would not be admitted. The appellate court declined to disturb the trial court's ruling because the prosecutor's questions were not unrelated to the events which gave rise to the drug charge against the defendant. Their purpose, according to the court, was to test the witness' truthfulness about facts and circumstances surrounding the alleged offense.

In *Brown* the Missouri Supreme Court held that the trial judge committed reversible error by striking the entire testimony of a nonparty defense witness who

---

1. *United States v. LaRiche et al.*, 549 F.2d 1088 (6th Cir. 1977), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 (1977); *United States v. DiGiovanni*, 544 F.2d 642 (2d Cir. 1976); *United States v. Gould*, 536 F.2d 216 (8th Cir. 1976); *United States v. Norman*, 402 F.2d 73 (9th Cir. 1968), *cert. denied*, 397 U.S. 938, 90 S.Ct. 949, 25 L.Ed.2d 119 (1970); *United States v. Cardillo*, 316 F.2d 606 (2d Cir. 1963), *cert. denied* 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963); *Margolis v. United States*, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963); *United States v. White*, 4 M.J. 628 (AFCMR 1977), *affirmed* 6 M.J. 12 (CMA 1978); *United States v. Terrell*, 4 M.J. 720 (AFCMR 1977), *affirmed* 6 M.J. 13 (CMA 1978); *United States v. Glenn*, 4 M.J. 706 (NCMR 1977), *pet. denied* 4 M.J. 357 (CMA 1978). Accord, *United States v. Anderson*, 4 M.J. 664 (ACMR 1977); also in accord, *United States v. McFarland*, 371 F.2d 701, 702 (2d Cir. 1966), *cert. denied*, 387 U.S. 906, 87 S.Ct. 1689, 18 L.Ed.2d 624 (1967); *Hett v. United States*, 353 F.2d 761 (9th Cir. 1966), *cert. denied*, 384 U.S. 905, 86 S.Ct. 1339, 16 L.Ed.2d 358 (1966); *see* McCormick, Evidence, § 19 (2d Ed. 1972).

testified on direct examination that the defendant did not participate in a robbery but on cross-examination refused to identify another person who had been arrested with the witness in a getaway car and whose identity was known to the prosecution and who had already been identified in testimony before the jury. In *Brown*, as in *Carter*, the direct testimony in question, would have operated as a complete defense, if believed by the jury. Because of this, and because the evidence was not cumulative, the court pointed out that the defendant was deprived of his right to have witnesses testify in his defense. Although the court stated that the defendant's Constitutional right[2] to call witnesses in his own defense does not necessarily mean that a trial judge must in every instance and under all circumstances refrain from striking all or part of a recalcitrant nonparty defense witness' testimony,[3] it did say:

> The court does not have the same discretion to strike the testimony of a nonparty defense witness as it does to strike the testimony of a witness for the prosecution or the testimony of the defendant himself when the witness refuses to answer material questions on cross-examination. This is founded on the constitutional rights of the defendant to confront his accusers, to cross-examine them, and to call witnesses in his own behalf. Those rights do not inure to the prosecution by the constitution—only to the defendant. See Amend. VI, U.S. Const. ... Of course, the administration of criminal justice requires that the state call witnesses and requires the state be able to cross-examine witnesses called by the defendant. But the protection of the state's right to do so does not authorize a court to cut short the defendant's constitutional right to call witnesses in his own

defense and to have the jury consider their testimony. 549 S.W.2d at 346.

Our comparison of the opinions in *Carter* and *Brown* convinces us that the Missouri Supreme Court's approach is preferable. While both courts recognize that the accused's constitutional right to present witnesses in his defense comes into play when an issue concerning striking a defense witness's testimony arises, the *Carter* court qualifies that right by "the necessity of compliance with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" (Citations omitted.) 293 N.W.2d at 685. The Missouri Court, recognizing "that striking the testimony of such a nonparty witness may deprive the defendant—but not the witness— of the right to have witnesses testify in defense," would not so lightly sanction this extreme remedy where the defendant was not at fault.

### III

The prosecutor's last question to Specialist Goudreau was not germane to her direct examination, consequently, the military judge erred in striking her entire testimony. His error was of constitutional dimension because he wrongfully deprived the accused of his right to present a witness in his own behalf.[4] This right is a fundamental element of due process of law. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).

### IV

Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1976) provides that: "A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law

---

2. Amend. VI, U.S. Constitution. *See also* Article 46, Uniform Code of Military Justice, 10 U.S.C. § 846 (1976).

3. Where the defendant refuses to answer material questions on cross-examination, striking of his testimony is proper. *See e. g. United States v. Panza*, 612 F.2d 432, 439 (9th Cir. 1979); *People v. Williams*, 30 Cal.App.3d 502, 106 Cal. Rptr. 324 (1973); *People v. Barthel*, 231 Cal.

App. 827, 42 Cal.Rptr. 290 (1965); *People v. McGowan*, 80 Cal.App. 293, 251 P. 643 (1926).

4. The U.S. Supreme Court noted in *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) that, "Few rights are more fundamental than that of an accused to present witnesses in his own defense."

unless the error materially prejudices the substantial rights of the accused."

██ Before constitutional error can be held harmless, we must be able to declare that it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Ward*, 1 M.J. 176 (CMA 1975). Specialist Goudreau was an important if not the major defense witness in extenuation. Her testimony, if believed by the court members, operated to show that appellant's actions were not without some encouragement by his victim. It portrayed appellant as one weak and tempted, rather than as an aggressive abuser of women. The court members were more likely to give greater credibility to this evidence from another female than if it came from appellant. Therefore, the fact that he also testified in a similar vein does not rectify the loss of Specialist Goudreau's testimony. Consequently, when we ask ourselves if there was a reasonable possibility that her testimony, had it not been stricken, might have brought about a lesser sentence, we must answer in the affirmative.

██ The findings of guilty are affirmed. We note that the appellant has served his sentence as approved by the convening authority, that he has been on excess leave since 1 July 1980, that the time has passed for automatic remission of the suspended portion of his sentence, and that he has passed his adjusted termination of service date. Consequently, we will reassess the sentence rather than remand this case. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms only so much of the sentence as provides for confinement at hard labor for three months and forfeiture of $100 pay per month for three months.

Senior Judge MITCHELL concurs.

WATKINS, Judge, concurring in part and dissenting in part:

I dissent. With deference to the views of my brothers who see the matter differently, my review of this guilty-plea case discloses neither constitutional error nor an abuse of discretion on the part of the trial judge.

The female witness was called by the defense during the presentencing portion of the trial. She testified on direct examination that she knew both the male appellant and the female victim, having worked with them in the dining facility for six months or more. Her story—that the two principals had engaged in "grab-assing" previously—portrayed the appellant in a most favorable light (in essence as an upright, hard-working individual) and the victim most unfavorably (as somewhat of a tease, prone to flirtatious behavior around the appellant). On cross-examination, it became clear that the witness was a "good buddy" of the appellant and that she did not like the victim, apparently because the victim had previously accused the witness of "several things in the mess hall" and had referred to her as "Miss Piggy." The witness further testified that she had worked for almost two years with, and considered herself a fairly good friend of, Specialist Four Russell, the appellant's roommate. It was at this point during the cross-examination of the witness that the trial counsel asked if it wasn't true that "the three of you are drug buddies." A defense objection to the question was overruled, but the witness refused to answer the question. Following a brief out-of-court hearing, the trial judge directed that the testimony of the witness be stricken and that it not be considered by the court members for any purpose.

As noted in the lead opinion, the actions of the trial judge comport fully with a general evidentiary rule of Federal and military law. Although the questioning had reached the point where an instruction on uncharged misconduct might well have been indicated, in my view there can be little question that the subject matter of the cross-examination was germane to the direct examination and was related to the witness' credibility. *See United States v. Rivas*, 3 M.J. 282, 285 (CMA 1977). Moreover, the witness' testimony regarding her friendship with the appellant (and his roommate) and her dislike of the victim gave rise

to a legitimate issue of bias in my opinion. Since bias, prejudice, or a motive to misrepresent can affect the totality of a witness' testimony, trial judges are properly vested with broad discretion in permitting the impeachment of such a witness. *See e. g., United States v. Robinson,* 530 F.2d 1076, 1079–82 (D.C.Cir.1976) wherein it was held that permitting a prosecutor to delve into the witness' drug involvement with the defendant did not constitute an abuse of discretion; *see also* Military Rules of Evidence, 608(c) (1 September 1980).

Because I believe that the proper evidentiary rule was applied in this instance, and because I find the record otherwise free from error, I would affirm the sentence as well as the findings of guilty.