UNITED STATES, Appellee

v.

John H. CUSTIS, Airman First Class

U.S. Air Force, Appellant

No. 07-0188

Crim. App. No. S30875

United States Court of Appeals for the Armed Forces

Argued October 15, 2007

Decided December 5, 2007

RYAN, J., delivered the opinion of the Court, in which EFFRON, C.J., and BAKER, ERDMANN, and STUCKY, JJ., joined.

<u>Counsel</u>

For Appellant:  Captain Timothy M. Cox, (argued); Lieutenant Colonel Mark R. Strickland, (on brief); Captain Chadwick A. Conn.

For Appellee:  Major Donna S. Rueppell, (argued); Colonel Gerald R. Bruce, Major Matthew S. Ward, and Captain Jefferson E. McBride (on brief).

Military Judge:  Kirk R. Granier

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Custis, No. 07-0188/AF

Judge RYAN delivered the opinion of the Court.

A special court-martial, composed of officer and enlisted members, convicted Appellant, contrary to his pleas, of conspiracy to obstruct justice, drunken operation of a vehicle,[1] soliciting obstruction of justice, disorderly conduct, and obstruction of justice, in violation of Articles 81, 111, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 911, and 934 (2000). The sentence adjudged by the special court-martial and approved by the convening authority included a bad-conduct discharge, reduction to the lowest enlisted grade, and confinement for thirty days.

The threshold question before us is whether a military judge may admit marital communications otherwise privileged under Military Rule of Evidence (M.R.E.) 504(b) by reference to a common law exception generally recognized in the United States federal courts but not listed within the exceptions specifically enumerated under M.R.E. 504(c).[2] For the reasons set forth below

---

[1] The panel acquitted Appellant of the specification of this offense related to the obstruction offenses, but convicted him of another specification of this offense for an incident that occurred months later.

[2] The granted issue states:

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY DENYING THE DEFENSE'S MOTION TO SUPPRESS AND HOLDING THAT CERTAIN STATEMENTS MADE BY THE APPELLANT TO HIS WIFE DID NOT FALL WITHIN THE PRIVILEGE FOR CONFIDENTIAL MARITAL COMMUNICATIONS.

65 M.J. 265 (C.A.A.F. 2007).

2

we answer that question in the negative, reverse in part, and affirm the sentence.

## I.

### A.  Factual Background

In the early morning hours of April 24, 2004, the Minot Air Force Base Security Forces stopped Appellant, who was driving a car with a broken license plate light.  Noting an odor of alcohol, Appellant's slow responses, and his glassy eyes, the security forces conducted field sobriety tests.  Appellant consented to a breathalyzer test, but failed to blow hard and long enough to give a testable sample of breath.

The security forces transported Appellant to the base hospital for a command directed blood alcohol test.  Through fortuity, and unbeknownst to the security forces, the laboratory technician called in to take the blood sample from Appellant was his wife, Airman Starleeka Creque.[3]  Neither Appellant nor Airman Creque informed the security forces of this connection.  Airman Creque drew two vials of blood from Appellant, covered the vials with tamper proof tape, and locked the vials in a secure box.

Later that day Airman Creque collected supplies from the hospital to redraw Appellant's blood at home.  The next day she drew two new vials of blood from Appellant's arm at their home.

---

[3] Between the time of the offenses and trial, Appellant and Airman Creque were divorced and she changed her last name from Custis to Creque.

She drew the second sample of blood from the same location on his arm as the first.  She then took the new samples to the hospital, switched them with the two samples she had taken the day prior that were in the locked box, and gave the original samples to Appellant.

The fact of the relationship between Appellant and the technician who drew his blood for the blood alcohol test was raised by the command.  Unsurprisingly, the security forces became suspicious when the lab report indicated that no alcohol was found in Appellant's blood sample.  Investigators questioned Airman Creque several times about whether she had switched blood samples.  After a dispute with Appellant, she admitted that she had switched them.

B.  Motion to Suppress and Procedural Background

At issue in this case are the communications between Appellant and Airman Creque related to the facts above.[4]  Prior to trial, Appellant moved pursuant to M.R.E. 504(b) to exclude the testimony of Airman Creque concerning her confidential communications with him between April 24, 2004, and April 26, 2004.  The Government opposed the motion, arguing that because Appellant and his wife were engaged in a joint venture to

---

[4] No one questions that the above factual descriptions of what Airman Creque did and observed were admissible, irrespective of M.R.E. 504(b).  See Pereira v. United States, 347 U.S. 1, 6 (1954) (noting that the marital communications privilege protects communications, not acts).

obstruct a lawful investigation, the trial court should apply a federally recognized common law exception to the marital privilege pursuant to M.R.E. 501(a)(4).

The military judge found that certain communications between Appellant and his wife during the two days they carried out their plan to switch his blood specimens were "intended . . . as private, marital communications between the two of them." But the military judge did not grant the motion to exclude the communications pursuant to M.R.E. 504(b).  Instead, after balancing the interests of the marital communication privilege in M.R.E. 504(b) against "the interests of justice," the military judge found that "there is a greater need to protect the interests of . . . truth in criminal proceedings."[5] Referencing M.R.E. 501(a)(4) and the common law exception to the marital privilege addressed in United States v. Smith, 30 M.J. 1022 (A.F.C.M.R. 1990), aff'd on other grounds, 33 M.J. 114 (C.M.A. 1991), the military judge concluded that "communications between spouses which are intended to perpetuate a fraud [on] the court, through joint criminal misconduct in the

---

[5] Although we decide this case on the basis of the text of the Rule, we note that the military judge, after determining the requirements of M.R.E. 504(b) were met, erroneously applied a balancing test to the application of an exception to the privilege.  Where applicable, the privilege is not subject to balancing.  See United States v. McCollum, 58 M.J. 323, 340 (C.A.A.F. 2003) (stating that communications protected by M.R.E. 504(b) are "privileged unless they otherwise fall under an exception to that rule").

communications between husband and wife are not protected by [M.R.E.] 504(b)."

At trial, over defense objection, Airman Creque testified as to the substance of her conversations with Appellant. She testified that they discussed the blood test at their home, and "how the [driving under the influence (DUI)] situation could be fixed." She divulged that Appellant initiated the conversation in which he asked her if she was the only person working that evening, who else had access to the secure box, and how long the alcohol would remain in his system. She further testified that when she went to take the second blood sample, Appellant told her to make sure she used the same location as the first samples.

As relevant to the granted issue, Appellant was convicted of conspiring with and soliciting Airman Creque to obstruct justice, and with obstructing justice himself, by interfering with the investigation of his alleged April 24, 2004, DUI.

The Air Force Court of Criminal Appeals affirmed the findings and sentence, holding that a common law exception to the marital privilege not contained within the exceptions listed in M.R.E. 504(c) could nonetheless be applied to negate the codified marital communications privilege contained in M.R.E. 504(b). United States v. Custis, No. ACM S30875, 2006 CCA LEXIS 263, at *4-*5, 2006 WL 3085507, at *1 (A.F. Ct. Crim App. Oct.

6

31, 2006) (unpublished).  It further held that, even if the conversations between Appellant and his wife were privileged under M.R.E. 504(b) "the [A]ppellant would be no better off. . . .  We find the evidence sufficient, even absent any mention of the conversations between the [A]ppellant and his wife, for a reasonable trier of fact to conclude" that Appellant was guilty of obstruction, as well as solicitation and conspiracy to commit obstruction.  2006 CCA LEXIS 263, at *4-*5, 2006 WL 3085507, at *1.

## II.  Discussion

Appellant argues that the military judge abused his discretion because he erroneously relied on M.R.E. 501(a)(4) for the authority to import a common law exception into the marital communication privilege codified in M.R.E. 504(b).  We agree.

### A.

Military Rule of Evidence 504 and the exceptions thereto reflect the policy judgments of the President regarding those communications between a husband and wife that are privileged and as to those communications that will be exempted from that privilege.  Military Rule of Evidence 504(b) provides a general privilege for confidential communications made during marriage:

> (b) <u>Confidential communication made during marriage</u>.
>
> (1) <u>General rule of privilege</u>.  A person has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from

> disclosing, any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law.

"Because Appellant's [communications] meet the requirements of M.R.E. 504(b)(1), they are privileged unless they otherwise fall under an exception to that rule." McCollum, 58 M.J. at 340. Specific exceptions to the marital privileges established in M.R.E. 504(a) and (b) are delineated in M.R.E. 504(c).

No one questions the military judge's finding that the communications at issue here were confidential marital communications that would, in the ordinary course, fall squarely within M.R.E. 504(b)(1). See McCollum, 58 M.J. at 336. And Appellant's communications with his wife do not fall within any of the exceptions listed under M.R.E. 504(c) and no one argues that they do.[6]

The military judge's decision to deny Appellant's motion to suppress otherwise privileged marital communications because the communications were made in furtherance of a crime has support in the common law "joint crime participant" or "crime/fraud" exception recognized by the Air Force Court of Criminal Appeals in Smith, 30 M.J. at 1025-27 (holding that marital communications made to further a crime were not privileged). Every federal circuit that has addressed the issue has found a

_____

[6] This case is thus inapposite to the issue addressed in United States v. Taylor, 64 M.J. 416, 417 (C.A.A.F. 2007).

8

"joint crime participant" or "crime/fraud" exception to the common law marital communication privilege.[7]

But the authority to add exceptions to the codified privileges within the military justice system lies not with this Court or the Courts of Criminal Appeal, but with the policymaking branches of government. See, e.g., Article 36(a), UCMJ, 10 U.S.C. § 836(a) (2000).[8] While we are aware of the principle that privileges should be construed narrowly, as they run contrary to a court's truth-seeking function, Trammel v. United States, 445 U.S. 40, 50-51 (1980), that principle has no application to the issue at hand. To uphold the exception relied on by the military judge and the Court of Criminal Appeals in this case, we would need to create an exception to a

---

[7] United States v. Westmoreland, 312 F.3d 302, 306-09 (7th Cir. 2002); United States v. Ramirez, 145 F.3d 345, 355 (5th Cir. 1998); United States v. Ramos-Oseguera, 120 F.3d 1028, 1042 (9th Cir. 1997), overruled in part, on other grounds, by United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000); United States v. Evans, 966 F.2d 398, 401-02 (8th Cir. 1992); United States v. Malekzadeh, 855 F.2d 1492, 1496 (11th Cir. 1988); United States v. Parker, 834 F.2d 408, 412 n.7 (4th Cir. 1987); United States v. Estes, 793 F.2d 465, 467-68 (2d Cir. 1986); United States v. Picciandra, 788 F.2d 39, 43-44 (1st Cir. 1986); United States v. Sims, 755 F.2d 1239, 1240-44 (6th Cir. 1985); United States v. Neal, 743 F.2d 1441, 1445-46 (10th Cir. 1984); United States v. Ammar, 714 F.2d 238, 258 (3d Cir. 1983); United States v. Cooper, 85 F. Supp. 2d 1, 30 (D.D.C. 2000).

[8] We do not question the authority of the President to create a "crime/fraud" exception under M.R.E. 504(c), as he has done in the attorney-client and psychotherapist-patient privileges. M.R.E. 502(d)(1); M.R.E. 513(d)(5).

rule where none existed before, not interpret a privilege narrowly or an exception broadly.  This we may not do.

This Court has never held that an exception to a marital privilege not contained within M.R.E. 504(c) may be used to frustrate the privilege established by M.R.E. 504(b)(1).  Our cases commend the opposite result.  See McCollum, 58 M.J. at 342 (determining whether an exception to a privilege should apply "is a legal policy question best addressed by the political and policy-making elements of the government"); United States v. Rodriguez, 54 M.J. 156, 160-61 (C.A.A.F. 2000) (recognizing that the scope and limitations on a privilege specifically delineated in the M.R.E. rests with the President, not this Court); United States v. Tipton, 23 M.J. 338, 342-43 (C.M.A. 1987) (rejecting application of an exception to a spousal privilege recognized in federal courts in favor of a strict application of the clear test provided by the rules, which provides "'the certainty and stability necessary for military justice'" (quoting Stephen A. Saltzburg et al., Military Rules of Evidence Manual 215 (1981))).

We disagree that M.R.E. 501(a)(4) provides authority to either the Court of Criminal Appeals or this Court to create an exception to the codified marital privilege by reference to the common law exception generally accepted in the United States

United States v. Custis, No. 07-0188/AF

federal courts.  Military Rule of Evidence 501 provides in relevant part:

> (a) A person may not claim a privilege with respect to any matter except as required by or provided for in:
>
> . . . .
>
> (4) The principles of common law generally recognized in the trial of criminal cases in the United States district courts pursuant to rule 501 of the Federal Rules of Evidence insofar as the application of such principles in trials by courts-martial is practicable and not contrary to or inconsistent with the code, these rules, or this Manual.

It is a well established rule that principles of statutory construction are used in construing the Manual for Courts-Martial in general and the Military Rules of Evidence in particular.  United States v. James, 63 M.J. 217, 221 (C.A.A.F. 2006); United States v. Lucas, 1 C.M.A. 19, 22, 1 C.M.R. 19, 22 (1951).  "[W]hen the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms."  Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (citations and quotation marks omitted).

The plain language of M.R.E. 501 addresses only "a claim of privilege."  It does not reference exceptions.  Nothing in the language of M.R.E. 501 itself warrants reference to a common law

11

exception to limit the privilege that is specifically established in M.R.E. 504(b)(1).

Additionally, the plain language of subpart (4) states that "principles of common law" may be relied on only when "not contrary to or inconsistent with . . . these rules." As M.R.E. 504(b) gives a husband-wife privilege without a "joint crime participant" or "crime/fraud" limitation, resorting to the common law to establish such an exception is both contrary to, and inconsistent with, the broader privilege provided by the President. The above points were unassailable when laid out by Senior Judge Everett years ago, and they remain no less true today. Smith, 33 M.J. at 119-20 (Everett, S.J., concurring in part); Tipton, 23 M.J. at 343-44.

Nor is this disposition, which differs from the conclusions of other federal courts, see supra note 7 and accompanying text, absurd. This Court, unlike other federal courts, has been provided with a comprehensive set of evidentiary rules with regard to privileges and the exceptions thereto. Compare Fed R. Evid. 501, with M.R.E. 501-13. This was based on a policy decision by the President to create clear and specific rules of privilege to apply within the military justice system. See Manual for Courts-Martial, United States Analysis of the Military Rules of Evidence app. 22 at A22-37 (2005 ed.) (reasoning that "[u]nlike the Article III court system . . . ,

the military criminal legal system is characterized by its dependence upon large numbers of laymen, temporary courts, and inherent [geographic] and personnel instability . . . . Consequently, military law requires far more stability than civilian law").

As a consequence, whereas privileges evolve in other federal courts based on case law determinations, in the military system the privileges and their exceptions are expressly delineated.  Compare Westmoreland, 312 F.3d at 308 (discussing underlying principles of the marital communications privilege when adopting a crime-fraud exception), with McCollum, 58 M.J. at 342 n.6 (determining that the "political elements of government" should make policy determinations with respect to privileges in the military system).  Therefore, under our system, it is for the policymaking branches of government to weigh the utility of the marital communications privilege against the truth-seeking function of the court-martial and, if appropriate, make adjustments to the express exceptions.

B.

Nor do we agree with the Court of Criminal Appeals' alternative grounds for affirming the conviction on all charges.

First, we are not persuaded by the Court of Criminal Appeals' legal conclusion that Appellant waived any privilege that would otherwise attach to his communications with his wife

by telling a coworker that his wife "had his back."[9]  Custis, 2006 CCA LEXIS 263, at *5 n.2, 2006 WL 3085507, at *1 n.2. Military Rule of Evidence 510(a) provides that a person "waives the privilege if the person discloses . . . any significant part of the matter."  "Voluntary disclosure applies only where the speaker elects to share a substantial portion of a privileged communication with a party outside of the privileged relationship."  McCollum, 58 M.J. at 338-39 (citing M.R.E. 510(a)).  "[T]he overall substance of the conversation" must be conveyed to the third party for there to be a waiver of the privilege.  United States v. McElhaney, 54 M.J. 120, 132 (C.A.A.F. 2000).

Appellant's comment to his coworker did not relay either the actual conversation between Appellant and his wife or the substance of the privileged communications between Appellant and his wife.  M.R.E. 510(a).  And the person to whom the comment was directed had no knowledge of the underlying conversation that might have given the comment in question special meaning.

---

[9] The Government did not argue waiver, a factbound determination, at trial, see, e.g., In re Keeper of the Records (XYZ Corp.), 348 F.3d 16, 23 (1st Cir. 2003) (stating that determining waiver of a privilege is an "evaluation [that] demands a fastidious sifting of the facts and a careful weighing of the circumstances"), and there are no findings by the military judge on the issue of waiver.

McElhaney, 54 M.J. at 132. Therefore, Appellant's single comment to his coworker did not waive the privilege.

Nor are we satisfied with the Court of Criminal Appeals' conclusion that "the evidence [was] sufficient, even absent any mention of the conversations between the [A]ppellant and his wife, for a reasonable trier of fact to conclude" that Appellant was guilty. Custis, 2006 CCA LEXIS 263, at *4-*5, 2006 WL 3085507, at *1.

The error in admitting privileged communications in this case is not constitutional in nature. McCollum, 58 M.J. at 342. In testing for "nonconstitutional harmless error . . . we conduct a de novo review to determine whether this error had a substantial influence on the members' verdict in the context of the entire case." United States v. Harrow, 65 M.J. 190, 200 (C.A.A.F. 2007) (citing Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)). Whether the evidence is factually sufficient to sustain a conviction is an altogether different question than whether an error had a substantial influence on the members' findings. Compare United States v. Turner, 25 M.J. 324, 325 (C.M.A. 1987) (discussing factual sufficiency), with McCollum, 58 M.J. at 342-43 (discussing nonconstitutional harmless error). If we cannot say the error did not have a substantial effect on the verdict, we cannot call it harmless, and must grant appropriate relief.

United States v. Custis, No. 07-0188/AF

In order to prove an Article 134, UCMJ, solicitation offense the Government must prove that the accused solicited another person to commit a certain offense, and that the accused did so with the intent that the person commit the offense. Manual for Courts-Martial, United States pt. IV, para. 105.b (2005 ed.). Here, Airman Creque's testimony regarding her conversations with Appellant was clearly material to the members' decision to find Appellant guilty of the solicitation specification. It was only those conversations that revealed that it was Appellant who initiated the conversation regarding the scheme to replace the blood tests, and evidence of those conversations that revealed it was Appellant who suggested that the blood be drawn from precisely the same place. There was no other evidence admitted to prove that it was Appellant who solicited Airman Creque's help in this crime, as opposed to Airman Creque who solicited Appellant's participation. Given the pivotal importance of the privileged communications to the solicitation charge, we cannot say the members were not substantially influenced by the erroneously admitted evidence.

Appellant's solicitation conviction is reversed. But none of Appellant's remaining convictions turned on who instigated the other's participation in the underlying obstruction offense. We conclude that the evidentiary error was harmless as applied to those convictions. In light of the testimony of Appellant's

16

wife as to both the actions she observed and the conduct in which she and Appellant engaged in together, we do not believe the erroneously admitted evidence had a substantial influence on the members with respect to those offenses.

As to the sentence, we conclude that the error was harmless. The military judge found the charges of conspiracy to obstruct justice and solicitation to obstruct justice multiplicious for sentencing and instructed the members to consider them as one offense in determining an appropriate sentence. We presume that the panel followed the instructions given by the military judge. See United States v. Thompson, 63 M.J. 228, 232 (C.A.A.F. 2006); United States v. Taylor, 53 M.J. 195, 198 (C.A.A.F. 2000); United States v. Holt, 33 M.J. 400, 408 (C.M.A. 1991). As we have no reason to question that the panel did so in this case, we conclude that the offense of solicitation to obstruct justice had no impact on Appellant's sentence.

## III. Decision

The decision of the United States Air Force Court of Criminal Appeals as to Charge III, Specification 1 (solicitation to obstruct justice) is reversed, the finding as to this specification is set aside, and this specification is dismissed. The remaining findings and the sentence are affirmed.