2D CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
SCHENCK, ZOLPER, and WALBURN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist CHRISTOPHER* J. MATTHEWS**
**United States Army, Appellant**

ARMY 20030404

Headquarters, 25th Infantry Division (Light) and U.S. Army, Hawaii
Theodore E. Dixon, Military Judge (Trial)
Richard J. Anderson, Military Judge (*DuBay* Hearing)
Colonel Gregory O. Block, Staff Judge Advocate

For Appellant: Captain Danyele M. Jordan, JA; Mr. Earle** A. Partington, Esq. (on brief).

For Appellee: Colonel John W. Miller, JA; Lieutenant Colonel Michele B. Shields, JA; Major Paul T. Cygnarowicz, JA; Captain Mason S. Weiss, JA (on brief).

21 May 2008

------------------------------------
OPINION OF THE COURT
------------------------------------

ZOLPER, Senior Judge:

On 11 April 2003, a military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of wrongful use of cocaine (two specifications) in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a [hereinafter UCMJ] and, contrary to his pleas, of assault upon a noncommissioned officer in which grievous bodily harm was intentionally inflicted in violation of Article 128, UCMJ. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for eleven months, forfeiture of all pay and allowances, and reduction to Private E1. This case is before the court for review under Article 66, UCMJ.

Appellate defense counsel assert, *inter alia*, the military judge erred by allowing trial counsel to comment upon the defense witness Private (PVT) James

*Corrected
**Corrected

Gibson's[1] invocation of his Fifth Amendment privilege against self-incrimination, and thereafter, improperly drawing an adverse inference based on those comments. We hold that the military judge erred by applying Military Rule of Evidence [hereinafter Mil. R. Evid.] 512 (applicable to privileged communications) and agree that he improperly drew an adverse inference from the witness's invocation of his Fifth Amendment protection. The military judge should have applied Mil. R. Evid. 301 (regarding protection against self-incrimination), and considered trial counsel's request to have the witness's testimony stricken from the record. We find, however, the evidence of guilt overwhelming and any error harmless beyond a reasonable doubt.

## FACTS

Appellant and his wife, Laurel Matthews, lived in on-post housing at Schofield Barracks, Hawaii. Sergeant (SGT) Brian Freeman knew appellant and Laurel from their previous assignments at Fort Stewart, Georgia. When SGT Freeman reported to Schofield Barracks, he renewed the friendship and visited them in their quarters several times. On the date of the charged offenses, SGT Freeman came to the Matthews' home to pick up his ex-girlfriend's daughter (Ashley), whom Laurel was babysitting. Sergeant Freeman arrived with his friend, Specialist (SPC) Jennifer McBurney, picked up Ashley, and went to the mall. When SGT Freeman returned to the Matthews' home later in the day, Laurel told him appellant wanted to talk with him inside. Laurel stepped outside with Ashley while SPC McBurney waited in appellant's car.

Upon entering the house, SGT Freeman noticed there were two other men in the kitchen; both were wearing battle dress uniforms without name tags. Although he did not know their identities at the time, they were [then] SSG James Gibson and Private First Class (PFC) Pedro Lozada III. Appellant began questioning SGT Freeman in the living room about whether SGT Freeman was facilitating Laurel's affair with another soldier. Appellant continued to question SGT Freeman, directed SGT Freeman to get Laurel from outside, and then continued to question both of them. Sergeant Freeman denied knowledge of an affair.

Appellant then pulled out a handgun from under the couch in the living room and inserted a loaded magazine. As SGT Freeman became frightened and turned to

---

[1] Private James Gibson was a staff sergeant (SSG) at the time the offenses were committed. Following UCMJ action prior to appellant's trial, he was reduced in rank from staff sergeant to private.

run through the kitchen, SSG Gibson and PFC Lozada grabbed SGT Freeman and pushed him back into the living room. Appellant then pistol whipped SGT Freeman from behind, and SGT Freeman heard what he believed to be a gunshot.[2] Two of appellant's neighbors also heard a gunshot. Sitting in appellant's car, SPC McBurney viewed the assault through the front window of the house. While SGT Freeman was on the floor with his head bleeding, appellant held the handgun to his head. With PFC Lozada and SSG Gibson beside him, appellant continued to threaten SGT Freeman and demanded he tell him what he knew of Laurel's infidelities. Hearing the sirens of approaching military police (MP), appellant told SGT Freeman to hide in the bathroom. Sergeant Freeman did so for a few moments but fled the house at the first opportunity. As SPC McBurney entered the house, she observed SGT Freeman run out, and appellant mopping blood off the floor. She heard appellant say he wished "it hadn't happened." Specialist McBurney then left the house and reported the incident to the MPs as they arrived. When the MPs entered the home, appellant told them there was nothing going on and that he and his wife had a little argument.

*Trial*

During the contested portion of his trial, appellant called PVT James Gibson as a witness.[3] Private Gibson testified favorably for appellant. During cross-examination, trial counsel asked PVT Gibson a series of questions, which could have elicited potentially inculpatory and self-incriminating responses. The questions pertained to PVT Gibson's previous misconduct were unrelated to the offenses underlying appellant's trial.[4] Private Gibson refused to answer these questions and

---

[2] Appellant was acquitted of negligently discharging a firearm and wrongfully communicating a threat to SGT Freeman, in violation of Article 134, UCMJ.

[3] Private Gibson testified under a limited grant of immunity for offenses resulting from his participation in the events for which appellant was charged. In accordance with Rule for Courts-Martial [hereinafter R.C.M.] 704, PVT Gibson was protected from subsequent prosecution for any of his statements regarding his involvement in the incident with the appellant; however, the military judge noted that, in this case, a more encompassing grant of immunity might have helped avoid his subsequent need to invoke his Fifth Amendment privilege against self-incrimination.

[4] Trial counsel's questions during cross-examination revealed the following: (1) the government accused PVT Gibson of falsifying an academic transcript and altering a physical fitness scorecard to enhance his promotion packet, which he submitted to the staff sergeant promotion board; (2) thereafter, charges were preferred against

(continued . . .)

invoked his Fifth Amendment privilege against self-incrimination thirteen times by stating, "I'll take the Fifth Amendment."

Based upon PVT Gibson's invocation, trial counsel requested to have him excused and his testimony stricken from the record. Although trial counsel asserted that she could not conduct a meaningful cross-examination of PVT Gibson, the military judge summarily denied the request. Despite PVT Gibson's repeated invocation of his Fifth Amendment privilege—matched by as many objections from civilian defense counsel—the military judge allowed trial counsel to continue with her line of questioning.

The military judge also permitted trial counsel to comment on PVT Gibson's invocation of his Fifth Amendment privilege against self-incrimination during her rebuttal argument on findings. During rebuttal, the following colloquy ensued between the military judge, trial counsel, and civilian defense counsel:

> TC: Referring back to Gibson. If you have to testify under a grant of immunity, and you still have to invoke your rights----
>
> CDC: Objection. I don't believe the court may properly draw [an] inference [based] on Gibson's invocation of his rights. I think it's forbidden. Isn't it under [Mil. R. Evid.] 608?
>
> MJ: Not that I'm aware of, sir.
>
> CDC: I believe it's certainly forbidden under the Fifth Amendment.
>
> MJ: If it was relating to the accused, you would be correct. As it relates to a witness, I know of no law that says that.
>
> CDC: I believe that is the law, Your Honor, but I admit, I cannot give you a citation at this time.

------

(. . . continued)
PVT Gibson; and (3) as a result, PVT Gibson submitted a request for discharge in lieu of court-martial which the convening authority approved.

MATTHEWS – ARMY 20030404

> MJ:  You may proceed.
>
> TC:  Thank you.  If you have to testify under a grant of
> immunity and still invoke your Fifth Amendment rights,
> especially with regards for your character for truthfulness,
> you probably shouldn't be believed. . . .  The government
> still wonders why he had to invoke his right in the
> beginning.

Although civilian defense counsel objected to trial counsel's comments, the military judge subsequently ruled that such comments were permissible based on the "interests of justice" exception to Mil. R. Evid. 512(a)(2).

After the military judge announced his findings on the record, he made the following additional comments:

> MJ:  For purposes of any appellate review of this case for
> factual sufficiency, the court had the opportunity to
> evaluate the credibility of each witness and considered
> each witness's ability to observe and accurately remember,
> sincerity, conduct in court, friendships, prejudices, and
> character for truthfulness.  The court also considered the
> extent to which each witness was supported or contradicted
> by other evidence, the relationship each witness had with
> the other side, and how each witness might be affected by
> the verdict.
>
> In weighing a discrepancy by a witness and between
> witnesses, the court considered whether it resulted from an
> innocent mistake or a deliberate lie.
>
> After taking all these matters into account, the court
> then considered the probability of each witness's
> testimony, and the inclination of each witness to tell the
> truth.  Based on the foregoing, the court finds beyond a
> reasonable doubt that Private Lozada, Private Gibson, and
> Mrs. Matthews were untruthful in their testimony.  The
> court further finds that these witnesses had every
> opportunity to, and did, collaborate to falsely testify in
> this case, motivated by obvious individual self-interest.
>
> Conversely, using the same standard, the court
> found Specialist McBurney credible and her testimony

5

truthful in all critical respects to the court's finding, relating to Charge I and [its] Specification.

*DuBay*[5] *Hearing*

On 14 July 2006, this court ordered a *DuBay* hearing. On 8 September 2006, the *DuBay* judge published extensive findings of fact and conclusions of law. In pertinent part, we summarize as follows:

(1) The military judge did not abuse his discretion by allowing the assistant trial counsel to comment on PVT Gibson's invocation of the privilege against self-incrimination in her rebuttal argument on findings.

(2) The military judge properly applied the "best interests of justice" exception to MRE 512(a)(2).

(3) The military judge did draw an adverse inference, that PVT Gibson was less credible, from PVT Gibson's invocation.

(4) The military judge made an *ex parte* off-the-record comment to civilian defense counsel and military defense counsel that he had considered PVT Gibson's invocation of the privilege in determining PVT Gibson's credibility.[6]

(5) The military judge, however, gave no weight to this inference, concluding, before he considered the inference, that PVT Gibson was not credible.

(6) The trial defense counsel did not raise any assertion of legal error in R.C.M. 1105 matters because trial defense counsel determined that there was no prejudicial error.

---

[5] *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

[6] Members of the judiciary should remember the importance of remaining ever vigilant in avoiding unnecessary *ex parte* communications. "An *ex parte* communication which gives the appearance of granting undue advantage to one party over the other cannot be condoned . . . indeed, we have cautioned that the appearance of impropriety is to be avoided at all costs." *United States v. Alis*, 47 M.J. 817, 824 (A.F. Ct. Crim. App. 1998); *see also United States v. Quintanilla*, 56 M.J. 37 (C.A.A.F. 2001) (finding *ex parte* communications prejudiced appellant).

(7)  The military judge committed no error and there was no prejudice to appellant.

## LAW

### *Standard of Review*

"We review *de novo* the question whether an error was harmless . . . .  The test for [C]onstitutional error is whether the error was harmless beyond a reasonable doubt . . . .  The test for nonconstitutional error is 'whether the error itself had substantial influence' on the findings."  *United States v. Walker*, 57 M.J. 174, 178 (C.A.A.F. 2002).  Typically, situations involving the application of Mil. R. Evid. 301 rise to a Constitutional magnitude.[7]  Without making a determination regarding the due process concerns in the present case, and out of an abundance of caution, we will evaluate whether any error was harmless beyond a reasonable doubt.  *United States v. Brewer*, 61 M.J. 425, 431 (C.A.A.F. 2005).

### *Military Rules of Evidence 301 and 512*

Although both the military trial judge and the *DuBay* judge applied Mil. R. Evid. 512, the proper rule regarding PVT Gibson's invocation of his Fifth Amendment privilege against self-incrimination while testifying is Mil. R. Evid. 301. Long standing canons of statutory construction require that when a specific statute exists on point, it is controlling.  *See Robertson v. Seattle Audobon Society*, 503 U.S. 429, 440 (1992).  In the present case, the specific, and therefore controlling, statute is Mil. R. Evid. 301, even though Mil. R. Evid. 512 does provide some general guidance regarding Constitutional privileges of witnesses.  *See* Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-37 (2002 ed.).  In light of this confusion, we will clarify the distinct roles of these two evidentiary rules.

---

[7]  *See United States v. Moore*, 36 M.J. 329, 336 (C.M.A. 1993); *United States v. Phaneuf*, 10 M.J. 831 (A.C.M.R. 1981).  It is important to note whose Constitutional interests are potentially at issue when applying Mil. R. Evid. 301.  When a nonparty witness invokes his Fifth Amendment protections against self-incrimination, the court is not concerned with protecting the Constitutional rights of the witness, but rather the due process rights of the accused.  *Moore*, 36 M.J. at 334.  This is because Mil. R. Evid. 301, when properly applied, may result in excluding testimony which could be considered either integral to appellant's fundamental right to present a defense or, conversely, impact appellant's right to confront witnesses against him. *See Phaneuf,* 10 M.J. at 834 (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)).

Military Rule of Evidence 301 applies when a defense or government witness invokes his Fifth Amendment privilege against self-incrimination during the course of his testimony. *See* Mil. R. Evid. 301.[8] Military Rule of Evidence 512 provides guidance to the military judge and counsel when a witness refuses to testify regarding privileged information. *See* Mil. R. Evid. 512.

*Military Rule of Evidence 301*

Military Rule of Evidence 301(f) provides:

> (1) *Generally.* The fact that a witness has asserted the privilege against self-incrimination in refusing to answer a question cannot be considered as raising any inference unfavorable to either the accused or the government.
>
> *(2) On cross-examination.* If a witness asserts the privilege against self-incrimination on cross-examination, the military judge, upon motion, may strike the direct testimony of the witness in whole or in part, unless the matters to which the witness refuses to testify are purely collateral.

Purely collateral matters are those issues which tend to involve

> evidence of minimal importance (usually dealing with a rather distant fact solicited for impeachment purposes) . . . . The drafters caution, however, that "where the privilege reaches the core of the direct testimony or prevents a full inquiry into the credibility of the witness, . . . striking of the direct testimony would appear mandated."

*Moore*, 36 M.J. at 335-336 (citations omitted); s*ee also United States v. Richardson*, 15 M.J. 41, 47 (C.M.A. 1983) (finding the military judge erred in striking the testimony of a defense witness when the subject of cross-examination was purely collateral, as it did not involve either issues germane to the accused's trial or matters of trustworthiness and credibility). "And as long as the subject matter of the cross-

---

[8] *See also Phaneuf*, 10 M.J. at 835. In *Phaneuf*, a defense witness invoked her Fifth Amendment privilege against self-incrimination while testifying during sentencing. The court determined striking her testimony prejudiced appellant; however, because remand was impracticable, the court reassessed the sentence. *Id.*

examination is germane to the direct examination or relates to the witness's credibility, cross-examination may extend to areas of self-incrimination." *Richardson*, 15 M.J. at 44. Courts have consistently held credibility issues are not collateral matters for either party, but rather key concerns of the truth seeking process.[9]

Once the military judge has determined the subject matter is not purely collateral, the rule permits him to strike the testimony of that witness, in whole or part, after careful consideration of "what if any remedy is necessary to achieve fairness and justice through the adversary system."[10]  *Moore*, 36 M.J. at 334; *see*

---

[9]              Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested . . . . [*United States v. Nobles*, 422 U.S. 225 (C.M.A. 1975)] makes clear that, like an accused, the prosecution is entitled to have a criminal case decided on the basis of trustworthy evidence. Therefore, if cross-examination helps to assure the trustworthiness of a witness's testimony, the [g]overnment should have the same opportunity to cross-examine defense witnesses that an accused enjoys with respect to prosecution witnesses. To allow an accused to offer evidence from witnesses whose veracity and powers of observation could not be tested adequately by cross-examination would grant him a privilege to mislead the trier of fact.

*Richardson*, 15 M.J. at 46 (internal citations omitted).

[10] If testimony of a witness is stricken, either in whole or in part, an accused's due process rights may be directly affected, making the decision one of Constitutional dimension. *Phaneuf,* 10 M.J. at 834. However, an accused's due process rights are not unfettered. As our superior court reiterated in *United States v. Hill,* 18 M.J. 459, 462 (C.M.A. 1984) (quoting *Nobles*, 422 U.S. at 241), the "*Sixth Amendment* does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the *Sixth Amendment* as a justification for presenting what might have been a half-truth." Therefore, merely because applying Mil. R. Evid. 301 might result in a limitation on an accused's due process rights it is not necessarily an unconstitutional remedy. *Id.*; *Richardson*, 15 M.J. at 46. "From the proposition that the [g]overnment and the defense should have equal access to evidence, the Court proceeded to the conclusion that neither party should be allowed

(continued . . .)

*Nobles*, 422 U.S. at 231 ("To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed by either the prosecution or by the defense."). A careful balance must be struck. When such testimony is offered by the defense, and potentially subject to complete exclusion under the rule, the Constitutional right of an accused to present witnesses in his defense is challenged. *Phaneuf*, 10 M.J. at 834; *Moore*, 36 M.J. at 336. Similarly, if the invocation is made by a government witness, and the military judge determines that striking the testimony is not warranted, such a decision implicates the accused's Constitutional right to confront witnesses against him. *United States v. Rivas*, 3 M.J. 282, 285 (C.M.A. 1977). As the court cautioned in *Moore*, 36 M.J. at 336, the military judge must "approach a ruling with some sensitivity" to ensure the outcome fortifies the integrity of the judicial process.

*Military Rule of Evidence 512*

Rule for Courts-Martial 512(a)(2) provides:

> (2) The claim of privilege by a person other than the accused whether in the present proceeding or upon a prior occasion normally is not a proper subject of comment by the military judge or counsel for any party. An adverse inference may not be drawn therefrom except when determined by the military judge to be required by the interests of justice.

The privileges relevant to the application of Mil. R. Evid. 512 include: the lawyer-client privilege, communications to the clergy, the husband-wife privilege, and the psychotherapist-patient privilege. *See* Mil. R. Evid. 501-512 (enumerating the relevant privileges for protection under Mil. R. Evid. 512). Although the invocation of any of the above enumerated privileges is not a proper subject for comment by any party during argument or rebuttal, an adverse inference can be drawn, when found to be in the "interests of justice." Such a determination is made only after a careful balancing of the competing interests and a finding that "there is a greater need to protect the interests of . . . truth in criminal proceedings" than there is to protect the sanctity of the privilege. *United States v. Custis*, 65 M.J. 366, 368 (C.A.A.F. 2007).

---

(. . . continued)
to offer evidence that was misleading or untrustworthy." *Richardson*, 15 M.J. at 45 (discussing *Nobles*).

**DISCUSSION**

In appellant's case, the military judge applied the wrong rule of evidence, seeking guidance under the provisions of Mil. R. Evid. 512, rather than Mil. R. Evid. 301. Consequently, he improperly conducted an "interests of justice" analysis and determined it was permissible to draw an adverse inference from PVT Gibson's decision to invoke his Fifth Amendment privilege against self-incrimination. Had the military judge properly applied Mil. R. Evid. 301, he would have recognized there is no "interests of justice" exception to the absolute prohibition against drawing any negative inferences from a witness's decision to invoke his Fifth Amendment protections. *See* Mil. R. Evid. 301(f)(1). The only potential remedy available under the rules after a witness invokes his Fifth Amendment privilege against self-incrimination is a determination of whether to grant a request to strike some or all of that witness's testimony. Regardless of whether the testimony is eventually stricken, the military judge, or panel, may not draw any adverse inference from the witness's decision to invoke.

In the present case, trial counsel asked PVT Gibson several questions directly relating to offenses that reflected on his credibility and veracity as a witness, patently not collateral matters. Specifically, he was asked about altering his results on a physical fitness test and falsifying an academic transcript. Both these acts, if true, could demonstrate PVT Gibson's character for untruthfulness, a matter which falls squarely within permissible, and even essential, grounds for cross-examination. Private Gibson repeatedly invoked his Fifth Amendment privilege against self-incrimination during this cross-examination. He did not, however, invoke any of the privileges enumerated in the relevant portions of the Military Rules of Evidence and protected pursuant to Mil. R. Evid. 512. The military judge should have applied Mil. R. Evid. 301, the rule which is more specific and therefore controlling, when ruling on trial counsel's request to have PVT Gibson's testimony stricken from the record. *United States v. Morlan*, 24 C.M.R. 390, 392 (A.B.R. 1957).

Additionally, trial counsel's rebuttal argument specifically referenced PVT Gibson's invocation. Since Mil. R. Evid. 301 prohibits drawing any adverse inference based upon the invocation of the witness's Fifth Amendment privilege against self-incrimination, it is fair to assume that it implicitly prohibits any party from critically *commenting* on the witness's invocation. Therefore, trial counsel's comment during rebuttal was also improper.

In sum, the military judge erred when applying Mil. R. Evid. 512, rather than the more specific and therefore controlling rule, Mil. R. Evid. 301. Consequently, he erred when he permitted trial counsel to comment during rebuttal argument on PVT Gibson's invocation of his Fifth Amendment privilege against self-incrimination. Lastly, the military judge erred when he ruled on defense counsel's objection to the

military judge drawing an adverse inference from PVT Gibson's invocation of his Fifth Amendment privilege against self-incrimination.[11]

## HARMLESS BEYOND A REASONABLE DOUBT

*Standard of Review*

Having decided the military judge erred, we will now determine whether such error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 M.J. 18 (1967). "[I]ssues involving possible [C]onstitutional error can be resolved by assuming [Constitutional] error and concluding that the error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2007). Therefore, it is not required that we actually find that the error identified was Constitutional error to apply Constitutional error analysis. *Id.*

*Elements of the Offense*

Appellant was convicted of assault upon a noncommissioned officer in which grievous bodily harm was intentionally inflicted, in violation of Article 128, UCMJ. The elements of Article 128b(4)(b) are:

> i) that the accused assaulted a certain person;
>
> ii) that the grievous bodily hard was thereby inflicted upon such person;
>
> iii) that the grievous bodily harm was done with unlawful force or violence; and
>
> iv) that the accused, at the time, had the specific intent to inflict grievous bodily harm.

*Manual for Courts-Martial, United States* (2002 ed.), Part IV, para. 54b. In the instant case, the government also had to prove that, at the time of the offense, the victim was known by the accused to be a noncommissioned officer. Therefore, to find the error harmless, it is necessary to determine that every element of this offense was proven by properly considered evidence presented at trial. *See Richardson*, 15 M.J. at 48-49.

---

[11] Military judge also erred when he summarily denied trial counsel's request to have PVT Gibson's testimony stricken from the record.

*Constitutional Error Analysis*

Following his deliberations, the military judge made several findings of fact on the record concerning the evidence presented at trial. Specifically, with regard to PVT Gibson, the military judge stated he "gave no weight to the [adverse] inference, concluding before he considered the inference, that PVT Gibson was not credible." Additionally, the military judge made several findings regarding the other evidence presented. He explained how he assessed each piece of evidence and each witness's testimony for importance, veracity, bias, impact, credibility, and contradiction. Based upon this assessment, he stated he found "beyond a reasonable doubt that . . . [the defense witnesses] were untruthful in their testimony" and that "[SPC] McBurney [was] credible in her testimony and truthful in all critical respects to the court's findings, relating to Charge 1 and [its] Specification." Furthermore, the military judge was able to consider the direct testimony of SPC Freeman and the neighbors, which corroborated the testimony of SPC McBurney. In effect, the military judge conducted his own version of a *Van Arsdall* analysis at the trial level.[12]

Following an order by this court, a *DuBay* hearing investigated the circumstances surrounding appellant's assertion of error. At this hearing, the military judge testified concerning his analysis of PVT Gibson's credibility as a witness. Again, the military judge explained that regardless of PVT Gibson's decision to invoke his Fifth Amendment privilege against self-incrimination, he found him to be an untruthful witness, with both motive and opportunity to lie regarding the incident.[13] While the military judge acknowledged he drew an adverse

---

[12] In *United States v. Othuru*, 65 M.J. 375, 378 (C.A.A.F. 2007), our superior court reminded us of the importance of assessing all the "host of factors" identified by the Supreme Court in *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986), before concluding that a Constitutional error is harmless beyond a reasonable doubt, to include: "the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradicting testimony of the witness on material points, the extent of the cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

[13] Appellate defense counsel, in supplemental pleadings, assert the military judge violated the deliberative process privilege, as explained in Mil. R. Evid. 509 and Mil. R. Evid. 606(b), by testifying about his thought process in ruling on the Mil. R. Evid. 512 objection. Military Rules of Evidence 509 and 606(b) describe the prohibitions which exist to keep jury members from disclosing their deliberative

(continued . . .)

inference, he reiterated that he gave no weight to this inference in his deliberations. The *DuBay* judge also found the military judge gave the adverse inference "no weight" and held there was "no prejudice to the appellant" from the improperly drawn inference.

Again, without determining whether this error rose to the level of Constitutional error, we will apply Constitutional error analysis to ensure heightened protections for appellant. "To determine whether the [C]onstitutional error was harmless beyond a reasonable doubt we consider the whole record." *Van Arsdall*, 475 U.S. at 681. Similar to the analysis conducted by the military judge and the *DuBay* judge, we must determine the impact of the improperly drawn inference on the findings, balanced against the "host of factors" available upon review for assessing the quality of the other evidence presented at trial. *Id.*

A thorough review of the record reveals the adverse inference had little or no impact on the findings of guilt, as there was ample properly considered evidence demonstrating appellant's guilt. Initially, and perhaps most importantly, the military judge heard the direct testimony of the victim, SGT Freeman, who described in detail the events of the assault. Next, the military judge heard the direct testimony of SPC McBurney, an eyewitness who observed most of the events through a window in the appellant's house. Additionally, the government presented two of appellant's neighbors, who corroborated key aspects of the eyewitness accounts. First, SGT Joshua Blickhahn testified he heard a gunshot-like sound just moments before seeing multiple people and cars leaving the appellant's residence. This corroborated the timeline of events. Second, PFC Gordon Loftin testified appellant told him before the incident that he had "found out [his] wife was cheating on [him], and the guy is coming over, so if you hear a lot of noise, don't worry about it" and that appellant was "going to take care of him." These statements were properly admitted admissions by the appellant.

---

(. . . continued)
process, through testimony or affidavit, not judges. Appellant provides no case law to support the proposition that these evidentiary rules apply to a military judge's deliberative processes. In fact, in *United States v. McNutt*, 62 M.J. 16, 20 (C.A.A.F. 2005), our superior court held Mil. R. Evid. 606(b) "applies to court members only, and thus, does not apply to protect the statement[s] of the military judge. . . ." Additionally, the court specifically addressed the present situation, recognizing "there [will be] certain extraordinary situations in which a judge may be called upon to explain his verdict or rulings in a subsequent proceeding." *Id.* at 21. In the instant case, such a circumstance arose and, acting under this contingency, we ordered the *DuBay* hearing.

In addition to the evidence presented by the government, the military judge considered other evidence presented by the defense. In particular, the military judge heard testimony from appellant's wife, and appellant's friend and alleged accomplice, PVT Lozada, both of whom the military judge found to be untruthful witnesses with clear motive and opportunity to fabricate. Based upon the properly considered testimony presented at trial by both parties, a finding of guilty was clearly supported by the overwhelming weight of the evidence.

"In the context of a particular case, certain [C]onstitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the factfinding process at trial." *Othuru*, 65 M.J. at 377 (quoting *Van Arsdall*, 475 U.S. at 681). In such cases, "[e]ven [C]onstituional error may not require reversal if beyond a reasonable doubt it was harmless to the accused." *Richardson*, 15 M.J. at 48. While considering all errors at the trial level, our application of the *Van Arsdall* criteria, similar to the assessments performed by the military trial and *DuBay* judges, convinces us that any errors resulting from the misapplication of Mil. R. Evid. 512 and the adverse inference drawn by the military judge from PVT Gibson's Fifth Amendment invocation were harmless beyond a reasonable doubt.

## CONCLUSION

We have considered appellant's remaining assignments of error, and those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit. Accordingly, the findings and sentence are affirmed.

Senior Judge SCHENCK[*] and Judge WALBURN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[*] Senior Judge Schenck took final action on this case prior to her retirement.