*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

### UNITED STATES
Appellee

**v.**

### Wendell E. MELLETTE Jr.,
### Electrician's Mate (Nuclear) First Class Petty Officer
United States Navy, Appellant

### No. 21-0312
Crim. App. No. 201900305

Argued February 8, 2022—Decided July 27, 2022

Military Judge: Warren A. Record

For Appellant: *Lieutenant Commander Michael W. Wester*, JAGC, USN (argued).

For Appellee: *Lieutenant Commander Jeffrey S. Marden*, JAGC, USN (argued); *Lieutenant Colonel Christopher G. Blosser*, USMC, *Major Clayton L. Wiggins*, USMC, *Lieutenant John L. Flynn IV*, JAGC, USN, and *Brian K. Keller*, Esq. (on brief).

Amicus Curiae on behalf of Patient/Victim SS: *Peter Coote*, Esq. (on brief).

Amici Curiae on behalf of the United States Navy, the United States Marine Corps, and the United States Coast Guard Victims' Legal Counsel and Special Victims' Counsel Programs: *Major Nathan H. Cox*, USMC, *Lieutenant Commander Adam J. Sitte*, JAGC, USN, and *Paul T. Markland*, Esq. (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON and Senior Judge RYAN joined. Judge MAGGS filed a dissenting opinion in which Judge SPARKS joined.

_____

Judge HARDY delivered the opinion of the Court.

The Government charged Appellant with sexually abusing and assaulting SS, a fifteen-year-old girl with a history of mental health issues. In preparation for his court-martial, Appellant sought access to SS's mental health diagnoses and treatments on the basis that the records could prove relevant to SS's credibility as a witness. The Government declined to

provide the requested records, asserting that the psychotherapist-patient privilege provided by Military Rule of Evidence (M.R.E.) 513 protected the records in toto from disclosure. Appellant filed a motion to compel production and in camera review of SS's mental health records, arguing primarily that the psychotherapist-patient privilege does not sweep so broadly as to protect a patient's diagnoses and treatment plan.

The military judge denied the motion, and the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) affirmed, holding that the psychotherapist-patient privilege protects not only confidential communications, but diagnoses and treatment plans contained within medical records. *United States v. Mellette*, 81 M.J. 681, 691–93 (N-M. Ct. Crim. App. 2021). We granted review to determine the scope of the patient-psychotherapist privilege under M.R.E. 513. *United States v. Mellette*, 82 M.J. 13 (C.A.A.F. 2021) (order granting review).

Based on the plain language of M.R.E. 513, and mindful of the Supreme Court's admonition that privileges must be strictly construed, we conclude that diagnoses and treatments contained within medical records are not themselves uniformly privileged under M.R.E. 513. The decision of the NMCCA is set aside, and we return the case to the Judge Advocate General of the Navy for further proceedings consistent with this opinion.

## I. Background

While serving in the Navy, Appellant engaged in a sexual relationship with SS, the fifteen-year-old sister of Appellant's then-wife. After Appellant's wife discovered the relationship, the couple divorced, with Appellant's now ex-wife receiving custody of their young daughter. During a later dispute over Appellant's visitation rights, Appellant's ex-wife reported his prior sexual relationship with SS to Appellant's commanding officer, leading to an investigation by the Naval Criminal Investigative Service (NCIS).

After the NCIS investigation, which included an interview with SS in which she revealed that she had spent time in a mental health facility, the Government charged Appellant with one specification of sexual abuse of a child and one specification of sexual assault of a child, both under Article 120b,

Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b (2012). A critical element of each charge was that the alleged misconduct occurred prior to SS's sixteenth birthday in July 2014. *See* Article 120b(h)(4), UCMJ (defining a child as "any person who has not attained the age of 16 years").

In parallel to the criminal investigation and proceedings, Appellant and his ex-wife continued their legal dispute over custody of their daughter. As part of those civil proceedings, SS sat for a deposition in which she discussed her prior sexual relationship with Appellant. During the deposition, SS disclosed that in August 2013, she voluntarily spent a week in a mental health facility after her high school administrators discovered she had engaged in self-harm. SS revealed at least part of the mental health diagnoses she received at the facility, her treatment plan during her stay, and the follow-up treatment plan she received when she was discharged.

Prior to his court-martial, Appellant sought discovery of any evidence that SS "sought or received mental health treatment" and copies of "S.S.'s medical records related to mental health and prescriptions" from the period when SS was in the mental health facility through the start of Appellant's court-martial. The Government denied the request, partially on the basis that the requested information was protected by the psychotherapist-patient privilege provided in M.R.E. 513. In response, Appellant moved to compel production and in camera review of SS's mental health records. Appellant asserted that the requested information was "relevant to issues of suggestion, memory, and truthfulness" with respect to SS.

The military judge denied Appellant's motion to compel, holding that the documents sought by Appellant were protected by the psychotherapist-patient privilege under M.R.E. 513. The military judge further concluded that Appellant had not provided any evidentiary or legal basis to order production of the documents and perform in camera review.

At Appellant's court-martial, SS testified that she had engaged in self-mutilation and spent time in a mental health treatment facility for depression and anxiety in August 2013. SS stated that she started spending more time with Appellant in the months following her discharge from the mental health

facility. SS described how Appellant starting sexually abusing her during those encounters, but she struggled to provide precise dates for when the abuse occurred. Although Appellant departed for deployment in February 2014, SS testified that the sexual abuse escalated when Appellant returned in April 2014.

Given the need for the Government to prove beyond a reasonable doubt that Appellant's alleged misconduct occurred before SS's sixteenth birthday in July 2014, Appellant's defense counsel focused on SS's inability to provide specific dates for the incidents of abuse and assault during SS's cross-examination. SS repeatedly answered that she didn't know or was not sure when the events she described during her direct testimony occurred, a fact that Appellant's counsel highlighted during his closing arguments.

The members, sitting as a general court-martial, convicted Appellant of one specification of sexual abuse of a child but acquitted him of sexual assault of a child, both offenses under Article 120b, UCMJ. The members sentenced Appellant to confinement for five years and a dishonorable discharge. The convening authority approved the sentence.

Before the NMCCA, both Appellant and the Government argued that the military judge erred in holding that medical records that revealed SS's diagnoses and treatments were privileged under M.R.E 513. *Mellette*, 81 M.J. at 691. The NMCCA disagreed, holding both that the plain language of M.R.E. 513 protected such records and that it would be absurd to conclude otherwise. *Id.* at 692. The NMCCA further held SS had waived the privilege by discussing her mental health diagnoses and treatment, including her prescribed medications, with her family, with NCIS, and during her civil deposition. *Id.* at 693.[1]

Having found error, the NMCCA then held that Appellant's lack of access to the requested information about SS's

---

[1] Even if SS had not waived the privilege, the NMCCA held in the alternative that the military judge abused his discretion in concluding that Appellant had not shown, at the very least, that in camera review of the pertinent mental health records was constitutionally required to protect Appellant's due process and confrontation rights. *Mellette,* 81 M.J. at 694.

mental health diagnoses and treatments only prejudiced Appellant with respect to the post-deployment allegations, which were supported solely by SS's testimony. *Id.* at 695–96. Because strong corroborating evidence existed for the predeployment allegations, the NMCCA held that the error was harmless beyond a reasonable doubt with respect to those findings. *Id.* Accordingly, the NMCCA struck the words "on divers occasions" from Appellant's conviction for sexual abuse of a child and reduced Appellant's sentence to three years of confinement and a dishonorable discharge. *Id.* at 701.

This Court granted review of the following three issues:

> I. M.R.E. 513 extends the psychotherapist-patient privilege to a "confidential communication" between patient and psychotherapist or assistant. Did the lower court err by concluding diagnoses and treatment are also subject to the privilege, invoking the absurdity doctrine?

> II. Did the NMCCA depart from Supreme Court and CAAF precedent by not reviewing the evidence at issue—diagnoses and treatment, including prescriptions—in concluding: (1) the mental health evidence was both prejudicial and non-prejudicial; and (2) failure to produce it was harmless beyond a reasonable doubt where the unknown evidence could have negated the evidence the NMCCA claimed to be "overwhelming" evidence?

> III. Whether the Court of Criminal Appeals erred by holding that [SS] waived the psychotherapist-patient privilege.

*Mellette*, 82 M.J. at 13–14.

## II. Discussion

We granted review of three questions in this case, but our answer to the first question—whether the patient-psychotherapist privilege established by M.R.E. 513 protects a patient's diagnoses and treatments from disclosure—moots the remaining two. Because we conclude that such records are not privileged under M.R.E. 513, we do not reach the second or third questions presented.

## A. Standard of Review

This Court reviews questions regarding the scope of the patient-psychotherapist privilege established by the Military

Rules of Evidence de novo. *United States v. Beauge*, 82 M.J. 157, 162 (C.A.A.F. 2022). When construing those rules, we apply the standard principles of statutory construction. *United States v. Kohlbek*, 78 M.J. 326, 330 (C.A.A.F. 2019). When the language of a rule is susceptible to only one interpretation, we enforce the rule according to its terms. *Id.* (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank*, N.A., 530 U.S. 1, 6 (2000)). But when a rule's language is ambiguous, we interpret that language within the broader context of the rule. *Beauge*, 82 M.J. at 162.

When interpreting M.R.E. 513, we must also account for the Supreme Court's guidance that "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public has a right to every man's evidence," *Trammel v. United States*, 445 U.S. 40, 50 (1980) (alteration in original removed) (internal quotation marks omitted) (citation omitted), and our own view that "privileges 'run contrary to a court's truth-seeking function,'" *United States v. Jasper*, 72 M.J. 276, 280 (C.A.A.F. 2013) (quoting *United States v. Custis*, 65 M.J. 366, 369 (C.A.A.F. 2007)). The Supreme Court has further advised that evidentiary privileges "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel*, 445 U.S. at 50 (internal quotation marks omitted) (citation omitted); *see also Jasper*, 72 M.J. at 280 (recognizing that privileges must be "narrowly construed").

### B. Military Rule of Evidence 513

We begin our analysis, as we must, with the text of the rule. M.R.E. 513(a) states:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

By its terms, the rule protects "confidential communication[s]" between a patient and a psychotherapist "made for

the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition."[2]

Although the first question presented asks whether "diagnoses and treatment are also subject to the privilege," that is not precisely the correct query. We have no doubt, and neither party disputes, that communications between a patient and a psychotherapist involving diagnoses and treatments are privileged and that a medical record could transcribe a communication in such a way to make it privileged. The critical question in this case is whether *other* evidence that does not qualify as a communication between a patient and a psychotherapist—such as a patient's routine medical records—are also protected by the rule. Essentially, the question before us is whether "communication[s]" in rule M.R.E. 513(a) should be interpreted narrowly to exclude medical records and other similar evidence that does not constitute a confidential communication or interpreted broadly to include all evidence that in some way reflects, or is derived from, confidential communications.

The Government argues that the plain language of M.R.E. 513(a) protects medical records that contain diagnoses and treatment, but we disagree. The phrase "communication made between the patient and a psychotherapist" does not naturally include other evidence, such as routine medical records, that do not memorialize actual communications between the patient and the psychotherapist. We must begin with the assumption that the President's specific choice of the word "communication" in M.R.E. 513(a)—rather than broader nouns such as "documents," "information," or "evidence"—and the President's inclusion of the limiting phrase "made between the patient and a psychotherapist" have meaning. Otherwise, nothing would distinguish the language of M.R.E 513(a) from a hypothetical, alternative rule that

---

[2] More accurately, the rule protects such communications between a patient and "a psychotherapist *or an assistant to the psychotherapist.*" M.R.E. 513(a) (emphasis added). To be clear, all references to communications with a psychotherapist in this opinion include communications to an assistant to the psychotherapist.

simply protected "documents made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition."

The President has the authority, within the limits of the Confrontation Clause, to define the scope of the patient-psychotherapist privilege as broadly as he sees fit. If the President intended M.R.E. 513(a) to broadly protect all patient medical records, the President could have used express language that unambiguously reflected that intent. Indeed, other jurisdictions have done exactly that. In Florida, for example, the legislature expressly protected mental health patients' records and diagnoses:

> A patient has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications or *records* made for the purpose of diagnosis or treatment of the patient's mental or emotional condition, including alcoholism and other drug addiction, between the patient and the psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist. *This privilege includes any diagnosis made, and advice given, by the psychotherapist in the course of that relationship.*

Fla. Stat. Ann. § 90.503(2) (West 2018) (emphasis added).[3] But here, the President chose a different path, including only confidential communications made between the patient and a psychotherapist with no mention of any other types of evidence.

The Government argues that, despite the specific language of M.R.E. 513(a), broader consideration of the entire rule makes clear that M.R.E. 513 protects all evidence that discloses a patient's diagnoses and treatment, regardless whether that evidence qualifies as a communication made between the patient and the psychotherapist. In support of this

---

[3] *See also, e.g.*, Wyo. Stat. Ann. § 33-38-113(a) (1999) (preventing the disclosure of "confidential information, including information contained in administrative records"); 740 Ill. Comp. Stat. Ann. 110/10(a) (West 2017) (preventing the disclosure of a patient's "record or communications"), Ark. R. Evid. 503(b) (preventing the disclosure of a patient's "medical records or confidential communications").

argument, the Government points to two provisions, M.R.E. 513(e)(2) and M.R.E. 513(b)(5). Again, we disagree. Neither provision overcomes the plain language of M.R.E. 513(a), especially given that we are required to narrowly construe the language of the rule. *Trammel*, 445 U.S. at 50; *Jasper*, 72 M.J. at 280.

M.R.E. 513(e) establishes a procedure to determine the admissibility of patient records or communications. Because the rule authorizes a military judge to examine the proffered evidence in camera "if such examination is necessary to rule on the production or admissibility of *protected* records or communications," M.R.E. 513(e)(3) (emphasis added), the Government argues that the patient-psychotherapist privilege must extend to all patient records. We disagree. Military Rule of Evidence 513(e)(3)—the only provision in M.R.E. 513(e) that uses the word "protected"—does nothing more than acknowledge the well-established rule that documents that are not themselves communications may be partially privileged to the extent that those records memorialize or otherwise reflect the substance of privileged communications. *See, e.g., Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962) ("Documentary evidence of confidential communications is necessarily privileged as much as testimonial evidence."). It does not mean that every document or record related to the diagnosis or treatment of a patient's mental health is privileged.

Similarly, M.R.E. 513(e)(2) requires a military judge to conduct a hearing before ordering the production or admission of "evidence of a patient's records or communication," defined as "testimony of a psychotherapist, or assistant to the same, or patient records *that pertain to* communications by a patient to a psychotherapist, or assistant to the same, for the purposes of diagnosis or treatment of the patient's mental or emotional condition." M.R.E. 513(b)(5) (emphasis added). The Government argues that because all patient records "pertain to communications" between the patient and the psychotherapist, they must all be included within the scope of M.R.E. 513(a). Again, we disagree. We interpret these provisions as simply recognizing that to the extent testimonial or documentary evidence reveals what M.R.E. 513(a) expressly

protects—confidential communications—they are also partially protected; not, as the Government argues, that the entirety of every patient record is necessarily included within the patient-psychotherapist privilege.

The Government also argues that we should interpret M.R.E. 513(a) as protecting all patient records related to the diagnosis or treatment of a patient's mental health because the textually similar lawyer-client privilege established by M.R.E. 502 protects attorney records. This argument is fatally flawed because it disregards the fact that the attorney work-product privilege is separate and distinct from the attorney-client privilege. *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). As defined by the Federal Rules of Evidence, attorney-client privilege is "the protection that applicable law provides for confidential attorney-client communications," while the work-product protection is "the protection that applicable law provides for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial." Fed. R. Evid. 502(g)(1)–(2).

This distinction between communications and tangible materials (i.e., records and other nontestimonial evidence), is also reflected in the *Manual for Courts-Martial, United States*. Although the military's attorney-client privilege protects "*confidential communications* made for the purpose of facilitating the rendition of professional legal services," M.R.E. 502(a) (emphasis added), an entirely separate provision—Rule for Courts-Martial (R.C.M.) 701(f)—protects attorney-work product. That provision expressly shields from disclosure or production "notes, memoranda, or similar working papers prepared by counsel and counsel's assistants and representatives." *Id*. Thus, the existence of an entirely separate provision from M.R.E. 502 protecting attorney-work product—and the lack of any parallel provision establishing a psychotherapist work-product privilege—undermines the Government's argument that M.R.E. 513(a) protects patient records.

Finally, the Government argues that a psychotherapist's diagnoses and treatment of a patient should be protected by M.R.E. 513(a) in the same way that an attorney's legal advice is protected by the attorney-client privilege. This argument fails because it conflates the content of communications with

underlying facts. *See* 1 Paul R. Rice, *Attorney-Client Privilege in the United States* § 5:1 (2014) ("An important but commonly misunderstood limitation of the privilege is that it does not protect the information contained within communications to the attorney."); *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney . . . .").

As explained by the United States Court of Appeals for the Second Circuit in a case where the government prosecutors sought answers from witnesses to a series of factual questions related to work performed by the corporate defendant's employees at the direction of their attorneys in preparation for litigation:

> Although an attorney-client communication is privileged and may not be divulged, the underlying information or substance of the communication is not, as appellants incorrectly believe, so privileged. Further, the remaining 19 questions seek underlying factual information to which the prosecutor is clearly entitled. The factual information is not protected by the attorney-client privilege just because the information was developed in anticipation of litigation.

*In re Six Grand Jury Witnesses*, 979 F.2d 939, 945 (2d Cir. 1992) (citation omitted). Even though the answers to the prosecutor's questions might reveal the substance of the legal advice provided by the defendant's attorneys, the government was still entitled to ask the recipients of the legal advice specific factual questions, such as:

- What analysis did you perform?

- What records did you review?

- What conclusions did your draw?

- What information did you give anyone other than an attorney?

- When did you give them this information?

*Id*. at 946 (Appendix A). This case demonstrates the fundamental principle that the attorney-client privilege prevents the disclosure of what an attorney advised a client to do, but

it does not prevent the disclosure of what the client actually did or did not do in response to that advice.

Accordingly, the Government is incorrect in its assertion that M.R.E. 513(a) must extend "not just to confidential communications . . . , but also to the underlying diagnoses and treatments." Brief for Appellee at 22, *United States v. Mellette*, No. 21-0312 (C.A.A.F. Dec. 20, 2021). A patient's diagnosis and the treatment that a patient received to care for those conditions are "underlying facts," *Upjohn Co.*, 449 U.S. at 395, not confidential communications. Although M.R.E. 513(a) prevents a witness from being required to disclose the substance of the communications between a patient and a psychotherapist, it does not extend to all evidence that might reveal a patient's diagnoses and treatments. The NMCCA erred in holding otherwise.

It is worth emphasizing that this conclusion is not based on our views on the proper scope of the patient-psychotherapist privilege or a belief that the benefits of protecting a patient's diagnoses and treatment from disclosure fail to "transcend[] the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel*, 445 U.S. at 50 (internal quotation marks omitted) (citation omitted). Instead, our analysis rests solely on the specific text of M.R.E. 513(a) and the Supreme Court's mandate—and our own precedent—that states that evidentiary privileges "must be strictly construed." *Trammel,* 445 U.S. at 50; *see Jasper*, 72 M.J. at 280. As the promulgator of the Military Rules of Evidence, the President has both the authority and the responsibility to balance a defendant's right to access information that may be relevant to his defense with a witness's right to privacy. Unless the President's decision with respect to that balance contravenes a constitutional or statutory limitation, we must respect that choice.

### C. Remaining Issues

Because we hold that the NMCAA erred when it concluded that M.R.E. 513(a) protects all evidence of a mental health patient's diagnoses and treatments from disclosure, we need not decide whether SS waived the privilege with respect to those topics or whether the NMCCA erred by performing its

prejudice analysis without examining the undisclosed evidence.

**D. Remedy**

Before trial, Appellant filed a motion to compel production and in camera review of "S.S.'s mental health records: to include the dates visited said mental health provider, the treatment provided and recommended, and her diagnosis." These documents were not protected from disclosure by M.R.E. 513(a), and as noted by the NMCCA, they involved key areas of concern that "go to the very essence of witness credibility and reliability—potential defects in capacity to understand, interpret, and relate events." *Mellette*, 81 M.J. at 694 (internal quotation marks omitted) (citation omitted). To the extent that these documents existed—and were otherwise admissible under the Military Rules of Evidence and the Rules for Courts-Martial—they should have been produced or admitted subject to the procedural requirements of M.R.E. 513(e).

The military judge's error may have denied Appellant from reviewing relevant and material evidence before his court-martial. Without any way of knowing whether any such evidence existed, or if so, how important that evidence might have been to Appellant's defense, we decline to decide whether Appellant was prejudiced by this error. Instead, we remand to the NMCCA to order a *DuBay* hearing for the purpose of obtaining any records that were responsive to Appellant's original motion to compel and determining whether those records should have been provided to Appellant prior to his court-martial.[4] Once all the responsive, relevant, and admissible evidence has been identified, the lower court shall determine whether the military judge's original denial of Appellant's motion to compel materially prejudiced Appellant's defense pursuant to its authority under Article 66, UCMJ, 10 U.S.C. § 866 (2012). Following these proceedings, Article 67, UCMJ, 10 U.S.C. § 867 (2012), shall apply.

---

[4] *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967). This may require the *DuBay* military judge to conduct an in camera review, issue appropriate protective orders, and place portions of the record under seal as necessary. *See* R.C.M. 701(g); R.C.M. 1113.

## III. Conclusion

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The record is returned to the Judge Advocate General of the Navy for remand to the lower court for further proceedings consistent with this opinion.

Judge MAGGS, with whom Judge SPARKS joins, dissenting.

The first assigned issue, and the only question that the Court decides in this appeal, is whether the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) erred in concluding that the psychotherapist-patient privilege established by Military Rule of Evidence (M.R.E.) 513 covers diagnoses and treatments. This issue is difficult and important. Indeed, it has divided the Courts of Criminal Appeals. *Compare H.V. v. Kitche*n, 75 M.J. 717, 719 (C.G. Ct. Crim. App. 2016) (holding that the privilege covers diagnoses and treatments), *and United States v. Mellette*, 81 M.J. 681, 692 (N-M. Ct. Crim. App. 2021) (same), *with United States v. Rodriguez*, No. ARMY 20180138, 2019 CCA LEXIS 387, at *7–8, 2019 WL 4858233, at *4 (A. Ct. Crim. App. Oct. 1, 2019) (unpublished) (holding that the privilege does not cover diagnoses and treatments).

In its thoughtful opinion, the Court determines, with some qualifications, that the privilege does not extend to diagnoses and treatments and holds that the NMCCA erred in deciding otherwise. My analysis is different, leading me to conclude that the privilege covers diagnoses and treatments to the extent that they reveal what a patient told a psychotherapist or a psychotherapist told a patient for the purpose of facilitating the diagnosis and treatment of the patient's mental condition. I therefore do not believe that the military judge or the NMCCA erred in their resolution of this issue.

The Court's conclusion with respect to the first assigned issue makes it unnecessary for the Court to reach the other assigned issues in this case. Because I disagree with the Court's resolution of the first assigned issue, I must go further and also address the other assigned issues. For the reasons that I present below, although I disagree with some aspects of the NMCCA's opinion in this case, I would affirm that court's judgment. *Mellette*, 81 M.J. at 701.

## I. Background

Prior to the trial in this case, Appellant moved for production of the victim's mental health records, requesting information about any "treatment provided and

recommended, and her diagnosis."[1] Appellant sought these records for their potential value in cross-examining the victim when she testified against him with respect to the sole specification at issue in this appeal.[2] Appellant asserted that this evidence would be "relevant to issues of suggestion, memory, and truthfulness."

The military judge, however, denied Appellant's motion, ruling that the psychotherapist-patient privilege in M.R.E. 513(a) shielded the records from discovery. Relying on the opinion of the United States Coast Guard Court of Criminal Appeals (CGCCA) in *H.V. v. Kitchen*, 75 M.J. at 719, the military judge further ruled that even if the records were not privileged, they were not discoverable under R.C.M. 703 because Appellant had failed to show that they were "relevant and necessary." The military judge reasoned that Appellant had no basis for believing that any nonprivileged records of the kind he sought existed or that such records would not be merely cumulative of information that he already had. Indeed, the military judge further ruled that there was no evidence that the victim might be suffering from a condition relevant to issues of "suggestion, memory, and truthfulness." The military judge accordingly concluded that "the defense [was] engaged in a 'fishing expedition.' "

The NMCCA partially agreed and partially disagreed with the military judge's ruling. *Mellette*, 81 M.J. at 688, 691–93. The NMCCA's analysis consisted of four steps relevant to this appeal.[3] First, the NMCCA held that the psychotherapist-patient privilege in M.R.E. 513(a) covers "diagnoses and

---

[1] Appellant also sought records concerning the dates that the victim visited her mental health provider, but the production of records concerning these dates is not at issue in this appeal.

[2] The sole specification at issue in this appeal alleged that Appellant, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b (2012), "did at or near Trenton, Florida, on divers occasions, between on or about August 2013 to on or about 12 July 2014, commit lewd acts upon [the victim], a child who had not attained the age of 16 years."

[3] The NMCCA addressed a possible alternative to the second and third steps but discussion of this alternative is not relevant to this appeal.

treatment, including prescribed medications." *Id.* at 691–92. Second, the NMCCA held that the victim waived this privilege under M.R.E. 510(a) by making voluntary disclosures of some of her diagnoses and treatments. *Id.* at 693. Third, the NMCCA held that the military judge abused his discretion in concluding that the requested medical records were not "relevant and necessary" under R.C.M. 703 given that other diagnoses "could impact her credibility" and medications could have a "potential for adverse effect on memory." *Id.* Fourth, the NMCCA held that the military judge's error caused material prejudice to the Appellant by limiting how effectively he could challenge the victim's allegations. *Id.* at 695–96. The NMCCA redressed the error by excepting from the specification at issue the words "on divers occasions," but it otherwise affirmed the finding of guilt. *Id.* at 696. In so doing, the NMCCA reasoned that other evidence corroborated the victim's testimony with respect to at least one occurrence of the charged offense. *Id.*

In this appeal, Appellant challenges the first and fourth steps of the NMCCA's reasoning. With respect to the first step, Appellant contends that the NMCCA erred in concluding that the psychotherapist-patient privilege in M.R.E. 513(a) extends to diagnoses and treatments. With respect to the fourth step, Appellant argues that the NMCCA erred in conducting its prejudice analysis because the NMCCA did not conduct an in camera review of the victim's mental health records to determine their content. Appellant asks this Court to set aside the NMCCA's decision and remand for a *DuBay* hearing with respect to the issue of prejudice. *See United States v. DuBay*, 17 C.M.A. 147, 149, 37 C.M.R. 411, 413 (1967).

The Government, in contrast, generally supports the NMCCA's analysis. But the Government asserts that if we choose to revisit the second step of the NMCCA's analysis, we should hold that the NMCCA erred in concluding that the victim completely waived her psychotherapist-patient privilege. In any event, the Government argues that this Court should affirm the adjudged and approved findings and sentence.

In my view, the NMCCA chose the correct four-step framework for deciding this case and its decision should be

affirmed. I also generally agree with the NMCCA's reasoning in these steps. But that said, I would qualify the NMCCA's conclusions as follows:

With respect to the NMCCA's first conclusion, I agree that the psychotherapist-privilege in M.R.E. 513(a) covers diagnoses and treatments *but only to the extent that they reveal confidential communications between the patient and psychotherapist that were made for the purpose of diagnosing or treating the patient's mental condition*.

With respect to the NMCCA's second conclusion, I agree that the victim in this case waived her psychotherapist-patient privilege *but only with respect to the communications containing the information that she revealed*.

With respect to the NMCCA's third conclusion, I agree that the military judge erred in denying production of the victim's medical records *but only to the extent that he denied production of the narrow class of records that contained communications about diagnoses and treatments with respect to which the victim previously had waived her privilege*.

With respect to the NMCCA's fourth conclusion, the qualifications above cause my prejudice analysis to differ somewhat from the analysis of the NMCCA. Unlike the NMCCA, I conclude that any error did not prejudice Appellant. Having reached that determination, I conclude that regardless of whether the NMCCA's remedial measure (i.e., excepting the words "on divers occasions" from the specification at issue) was required for addressing an error with respect to M.R.E. 513(a), no further remedy is necessary.

## II. Standards of Review

Several different standards of review apply to this case. This Court must uphold the military judge's findings of fact unless they are clearly erroneous. *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002). Issues about the meaning of evidentiary rules such as M.R.E. 510(a) and M.R.E. 513(a) are questions of law that this Court must decide de novo. *United States v. Matthews*, 68 M.J. 29, 35–36 (C.A.A.F. 2009). This Court reviews a military judge's denial of production of evidence under M.R.E. 703(e)(1) for abuse of discretion. *United States v. Mosley*, 42 M.J. 300, 303 (C.A.A.F. 1995).

Finally, "[w]e review prejudice determinations under a de novo standard of review." *United States v. Ward*, 74 M.J. 225, 227 (C.A.A.F. 2015) (citing *United States v. Diaz*, 45 M.J. 494, 496 (C.A.A.F. 1997)).

### III. Discussion

Following the framework of the NMCCA's opinion, I address the following issues: (A) the application of the psychotherapist-patient privilege in M.R.E. 513(a) to diagnoses and treatments; (B) the victim's possible waiver of the psychotherapist-patient privilege under M.R.E. 510(a); (C) Appellant's right to production of records under R.C.M. 703; and (D) the prejudice to Appellant under Article 59(a), UCMJ, 10 U.S.C. § 859(a).

### A. Application of the Psychotherapist-Patient Privilege in M.R.E. 513(a) to Diagnoses and Treatments

M.R.E. 513(a) creates an evidentiary privilege that protects from disclosure certain communications between a patient and a psychotherapist.[4] The rule states in relevant part:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist . . . if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

M.R.E. 513(a).

This Court interprets the M.R.E., including those rules establishing privileges, according to their plain meaning. *Matthews*, 68 M.J. at 38. Although the Supreme Court strictly construes federal common law privileges to limit their application, *Trammel v. United States*, 445 U.S. 40, 50 (1980), this practice has no clear application to the interpretation of codified privileges. 25 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence*

---

[4] M.R.E. 513(b)(2) defines the term "[p]sychotherapist" in part to include "a psychiatrist, clinical psychologist, clinical social worker, or other mental health professional who is licensed . . . to perform professional services."

§ 5586, at 715 (1989) (explaining that *Trammel* does not affect the meaning of privileges codified in statutes). Consistent with this view, this Court has not construed privileges in the M.R.E. to be more limited than what their text provides. *See United States v. Custis*, 65 M.J. 366, 369 (C.A.A.F. 2007) (declining to create an exception to M.R.E. 504 by departing from the rule's text notwithstanding what the Supreme Court said in *Trammel*).

In this case, the parties' dispute over the meaning of M.R.E. 513(a) is simply summarized. Appellant argues that the psychotherapist-patient privilege covers "communication[s] . . . made *for the purpose of facilitating diagnosis or treatment*" but does not extend to the diagnosis and treatment themselves. Relying on the opinion of the United States Army Court of Criminal Appeals in *Rodriquez*, 2019 CCA LEXIS 387, at *7–8, 2019 WL 4858233, at *4, Appellant contends that the plain meaning of M.R.E. 513's text supports this conclusion. The Government responds that diagnoses and treatments are privileged. Quoting the CGCCA's opinion in *H.V. v. Kitchen*, 75 M.J. at 719, the Government argues that "'diagnoses and the nature of treatment necessarily reflect, at least in part, the patient's confidential communications to the psychotherapist' because '[m]ost diagnoses of mental disorders rely extensively on what the patient has communicated to the psychotherapist.'" (Alteration in original.) The Government further contends that diagnoses and treatment are part of the confidential communications that a psychotherapist makes to facilitate treatment.

In my view, the text of M.R.E. 513 supports the view of the Government and the *H.V. v. Kitchen* opinion. M.R.E. 513(a) grants a patient a privilege to prevent anyone from "disclosing" a confidential communication between the patient and a psychotherapist that was made for the purpose of facilitating diagnosis or treatment of the patient's mental condition. Key to interpreting this provision is a careful consideration of how someone might "disclose" a covered communication. In general, the verb "to disclose" means "to reveal in words (something that is secret or not generally known)." *Merriam–Webster Unabridged Dictionary* https://unabridged.merriam-webster.com/unabridged/disclose (last

visited July 26, 2022). The central question here is whether M.R.E. 513(a) addresses only complete and verbatim disclosures of covered communications or instead addresses any disclosures of such communications.

M.R.E. 513(a) certainly empowers a patient to prevent a complete and verbatim disclosure of a covered communication. For example, the patient could prevent the psychotherapist from releasing either the original copy or a photocopy of a confidential written communication between the psychotherapist and the patient that was made for the purpose of facilitating the diagnosis or treatment of the patient's condition. Similarly, if the covered communication was made orally, the patient could prevent the psychotherapist from releasing a video or audio recording or a transcription of the communication. Such acts would be disclosures within the meaning of M.R.E. 513(a) because they would reveal the covered communications.

But M.R.E. 513(a) does not qualify the term "disclosing" in such a way that the privilege only allows a patient to prevent someone from disclosing a complete and verbatim record of a covered communication. A partial or nonverbatim disclosure is still a disclosure so long as it reveals some of what would otherwise be secret. Accordingly, a patient may use the privilege in M.R.E. 513(a) to prevent the psychotherapist from disclosing notes of what was discussed during covered communication, even if those notes are not necessarily a complete and verbatim transcript of what was said. *See United States v. Beauge*, 82 M.J. 157, 159–60 (C.A.A.F. 2022) (holding that the military judge did not abuse his discretion in denying the appellant's motion for in camera review of the victim's psychiatric records including "the psychotherapist's notes"). Similarly, the privilege allows a patient to prevent a psychotherapist from testifying about what he or she remembered was said in a covered communication, even if the psychotherapist could not necessarily recollect the exact words that were uttered. *See United States v. Jenkins*, 63 M.J. 426, 428 (C.A.A.F. 2006) (assuming that a psychotherapist's testimony was covered by M.R.E. 513(a) but determining that it fell within the exceptions in M.R.E. 513(d)(4) and (6)).

Much like a nonverbatim summary or recollection, a diagnosis or treatment also may provide some evidence of what a patient confidentially told the psychotherapist or what the psychotherapist confidentially told the patient for the purpose of treating the patient's mental condition. As a U.S. district court explained in *Stark v. Hartt Transportation Systems, Inc.*, "[a] person's mental health diagnoses and the nature of his or her treatment inherently reveal something of the private, sensitive concerns that led him or her to seek treatment and necessarily reflect, at least in part, his or her confidential communications to the psychotherapist." 937 F. Supp. 2d 88, 91 (D. Me. 2013); *see also H.V. v. Kitchen*, 75 M.J. at 719 (citing and following *Stark*). Or as another U.S. district court explained in *United States v. White*, "[a] party armed with knowledge of a patient's diagnosis will be able to make an educated guess about the substance of the communications that gave rise to the diagnosis." Criminal Action No. 2:12-cr-00221, 2013 U.S. Dist. LEXIS 49426, at \*23, 2013 WL 1404877, at \*7 (S.D.W.Va. Apr. 5, 2013), *rev'd sub nom. Kinder v. White*, 609 F. App'x 126, 131 (4th Cir. 2015) (agreeing with the trial court that the records of a diagnosis were privileged but overruling its determination that an exception to the privilege applied). In other words, disclosing a diagnosis or a treatment may reveal what the patient said to the psychotherapist or what the psychotherapist said to the patient for the purpose of facilitating treatment of the patient's mental condition.

Accordingly, I would hold that a record of a patient's diagnosis is privileged to the extent that its disclosure would reveal what the patient confidentially told the psychotherapist or what the psychotherapist confidentially told the patient for the purpose of diagnosing or treating the patient's mental condition. For example, a record containing a diagnosis of anxiety or depression would be privileged to the extent that disclosure of the diagnosis reveals, even if only indirectly, that the patient told the psychotherapist that the patient was anxious or depressed for the purpose of obtaining treatment. Likewise, I would hold that a treatment is privileged to the extent that its disclosure would reveal what the psychotherapist confidentially told the patient or what the patient confidentially told the psychotherapist for the

purpose of diagnosing or treating the patient's mental condition. For example, a record showing that the psychotherapist prescribed a regimen of counseling or medication would be privileged to the extent that disclosing the treatment regimen provides some evidence about what the psychotherapist confidentially told the patient for the purpose of treating the patient's mental condition.[5]

Similar questions about what constitutes a disclosure have arisen with respect to other privileges. A leading treatise notes that "[a]n important question about the power of the client to prevent disclosure of attorney-client confidences . . . is whether the privilege bars circumstantial as well as direct evidence of attorney-client communications." 24 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5489, at 424 (1986). Some courts have reasoned, correctly in my view, that a "lawyer's papers should be privileged if they would be circumstantial evidence of the client's communication" under the attorney-client privilege. *Id.* § 5491, at 459; *see also* 24 Charles Alan Wright, Kenneth W. Graham, Jr. & Ann Murphy at 318 n.89 (1986 & Supp. 2022) (citing cases). Likewise, although the government deliberations privilege generally does not cover portions of documents that contain only facts, the privilege will cover factual "material [that] is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).

In this case, as explained above, Appellant moved for production of the victim's mental health records, requesting information about any "treatment provided and

---

[5] Communications from a psychotherapist to a patient about a diagnosis or treatment might be beneficial or even required. After observing that "psychiatrists often have to break difficult news to patients," the author of one peer-reviewed study discusses both the "negative and positive effects of disclosing the diagnosis to patients." Michelle Cleary et al., *Delivering Difficult News in Psychiatric Settings*, 17 Harv. Rev. Psychiatry 315, 319 (2009). Such disclosures, the author asserts, may facilitate treatment by providing patients the benefits of "increased insight into their symptoms, ability to access treatment, and plans for the future." *Id.*

recommended, and her diagnosis." To the extent that any such records containing a diagnosis and treatment would reveal what the victim confidentially told her psychotherapist or the psychotherapist confidentially told the victim for the purpose of facilitating her diagnosis and treatment, they are privileged. Such records are not discoverable.

But what about possible records containing diagnoses and treatments that somehow disclose nothing about the confidential communications between the victim and her psychotherapist? The answer is twofold. First, if any such records somehow existed, they would not be privileged under M.R.E. 513. Second, as the military judge recognized, they still would not necessarily be discoverable. Under R.C.M. 703(e)(1), the accused "is entitled to the production of evidence which is relevant and necessary." To obtain an order of production under this rule, the accused must show more than a mere prospect or possibility that a production order will yield relevant and necessary evidence. "[T]he defense, as the moving party, . . . [is] required as a threshold matter to show that the requested material exist[s]." *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004).

In this case, the military judge found that "the defense has offered some evidence that the records might include an additional diagnosis." But the military judge concluded that the defense "has offered no factual basis upon which to conclude the records would yield evidence admissible under M.R.E. 513." I agree with the military judge's assessment. Appellant has not provided any reason for this Court to believe that the victim's mental health records contain any information about diagnoses and treatments *that do not reveal what the victim confidentially told her psychotherapist or what the psychotherapist confidentially told the victim for the purpose of facilitating her diagnosis or treatment.* And even if the records somehow might exist, I agree with the military judge's assessment that such records would not be "reasonably segregable from records of communications between [the victim] and her mental health providers." Appellant in this case has not suggested any method by which a military judge could decide whether a diagnosis or treatment provides evidence of their confidential

communications.**6** For these reasons, Appellant has not shown that he is entitled to the records or even an in camera review of the records.

### B. Waiver of the Privilege Under M.R.E. 510(a)

Under M.R.E. 510(a), a party may waive the protection of the psychotherapist-patient privilege. This provision states in relevant part:

> A person upon whom these rules confer a privilege against disclosure of a confidential matter or communication waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication under such circumstances that it would be inappropriate to allow the claim of privilege.

M.R.E. 510(a). Appellant argues that the victim waived whatever privilege she may have had by voluntarily revealing numerous details about her mental health in a deposition, in an interview with agents of the Naval Criminal Investigative Service, and in an interview with trial counsel. The Government responds that when the victim disclosed some of her diagnoses and treatments, she waived her privilege *only for* "that particular communication" between her and her psychotherapist that "included the diagnoses and treatments that she disclosed."

I agree with the Government because its argument accords with the text of both M.R.E. 510(a) and M.R.E. 513(a). Although M.R.E. 510(a) states a general waiver rule applicable to any disclosure of a privileged "matter or communication," M.R.E. 513(a) provides a privilege only for "communication[s]," not for "matters." Thus, the test for waiver of the psychotherapist-patient privilege in M.R.E. 513(a) is not whether the patient talked about her mental health in general, but is instead whether she disclosed a "significant part" of a particular privileged "communication."

---

**6** Perhaps in other cases, the record might contain evidence that would allow a military judge to make such a decision. For example, a psychotherapist might testify that he or she made a diagnosis without relying on confidential communications with the patient for the purpose of treating the patient's mental condition.

*See Custis*, 65 M.J. at 371 (holding that under M.R.E. 510(a), the appellant did not waive the spousal privilege because a "comment to his coworker did not relay either the actual conversation between Appellant and his wife or the substance of the privileged communications between Appellant and his wife").

The NMCCA appears to have missed this distinction when it concluded that the victim waived her psychotherapist-patient privilege when she "openly discussed her *mental health matters* with multiple people on multiple occasions." *Mellette,* 81 M.J. at 693 (emphasis added). The NMCCA instead should have determined whether particular disclosures by the victim waived her privilege with respect to particular communications. In my view, because the NMCCA did not follow this approach, it overstated the victim's waiver of her privilege in this case.

Under M.R.E. 510(a), when the victim disclosed evidence of her diagnosis and treatment for two mental health conditions (hereinafter the "two disclosed conditions"), she waived the privilege over her psychotherapist's communications to her about the diagnoses and treatments with respect to these two disclosed conditions. The victim, however, did not waive her privilege over other communications—including other communications that might have led to additional diagnoses and treatments. As discussed immediately below, this important distinction affects the analysis of the necessity of producing records containing communications for which the privilege was waived.

C. Production of Records Under R.C.M. 703(e)(1)

Under R.C.M. 703(e)(1), a "party is entitled to the production of evidence which is relevant and necessary." Under R.C.M. 703(f), an accused seeking production of an item of evidence must "include a description of [the] item sufficient to show its relevance and necessity." The military judge, in my view, did not abuse his discretion in concluding that Appellant could not meet these requirements in seeking records of diagnoses and treatments for possible conditions other than the two that the victim had disclosed. Although Appellant "offered some evidence that the [psychotherapist's]

records *might* include an additional diagnosis," the military judge concluded that the defense "has offered no factual basis upon which to conclude the records would yield evidence admissible under M.R.E. 513." *See Rodriguez*, 60 M.J. at 246 (holding that, where the appellant "did not carry his burden as the moving party to demonstrate that the [evidence] he requested existed," he could not show it was relevant or necessary). To the extent the NMCCA ruled otherwise, I disagree.

But in my view, the military judge did abuse his discretion in denying production of records containing diagnoses and treatments for the two disclosed conditions. These records were not privileged because the victim waived her privilege with respect to them. And even if such records would be mostly cumulative, I agree with the NMCCA that they were still subject to production under R.C.M. 703, to "confirm [the victim's] stated diagnoses" and "prescribed medications, not all of which she could remember the names of." *Mellette*, 81 M.J. at 693.

## D. Prejudice Under Article 59(a), UCMJ

In the foregoing discussion, I have concluded that the military judge abused his discretion in not ordering the production of records concerning the victim's diagnoses and treatments with respect to two disclosed conditions. The final question is whether this abuse of discretion materially prejudiced Appellant under Article 59(a), UCMJ. I conclude that it did not.

When assessing prejudice for nonconstitutional errors, this Court weighs "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (internal quotation marks omitted) (citations omitted). Here, although the first two factors do not strongly favor either party, I do not believe the materiality and quality of the evidence are such that the error could have substantially impacted the findings. As explained above, Appellant already knew from the victim's own statements that she had been diagnosed with the two disclosed conditions and had received treatments for them. Her mental health

records might have provided confirmation of what the victim disclosed. But the record of trial provides no suggestion that having such mental health records would have benefitted Appellant at trial.

After the victim testified, trial defense counsel cross-examined and then recross-examined her. During these cross-examinations, trial defense counsel never asked the victim about her two disclosed conditions. Unless trial defense counsel erred (which Appellant has not alleged), then the most reasonable inference is that trial defense counsel believed that the two disclosed conditions were not "relevant to issues of suggestion, memory, and truthfulness." And if they are not so relevant, then I cannot see how additional or confirmatory communications about those two disclosed conditions would have made a difference.

The NMCCA believed that there was prejudice but that the appropriate remedy for addressing the prejudice was to except from the specification at issue the words "on divers occasions."[7] Because I would not have awarded any remedy for the failure to produce the medical records, I easily conclude that Appellant is not entitled to any additional remedy.

### IV. Conclusion

For the foregoing reasons, I would affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals.

---

[7] The NMCCA also based its decision to except this language because some of the evidence purporting to support it was improper opinion testimony. *Mellette*, 81 M.J. at 698.